UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| SOUTHERN ENVIRONMENTAL LAW CENTER, | ) |
|---|---|
| Plaintiff, | ) |
| v. | ) No.: 3:24-CV-97-TAV-DCP |
| TENNESSEE VALLEY AUTHORITY, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

This civil matter is before the Court on defendant's Motion for Partial Dismissal for Lack of Subject Matter Jurisdiction [Doc. 19]. Plaintiff responded [Doc. 25] and defendant replied [Doc. 28]. Plaintiff filed two supplemental briefs [Docs. 29, 31] pursuant to Local Rule 7.1(d), alerting the Court to related case developments. Defendant responded to the first of these briefs [Doc. 30] and the time for responding to the second has passed. *See* E.D. Tenn. L.R. 7.1(d). Accordingly, this matter is ripe for resolution. *See* E.D. Tenn. L.R. 7.1(a). For the reasons explained below, the Court will **DENY** defendant's Motion for Partial Dismissal for Lack of Subject Matter Jurisdiction [Doc. 19].

I. **Background**

This case arises from plaintiff's Freedom of Information Act ("FOIA") requests regarding the Cumberland Fossil Plant managed by the Tennessee Valley Authority ("TVA") [Doc. 1 ¶¶ 1–2]. Plaintiff seeks declaratory and injunctive relief, alleging that defendant failed to comply with FOIA requirements in responding to its requests [*Id.* ¶¶ 3–4]. Plaintiff submitted three separate FOIA requests in December 2022, March 2023,

and April 2023 [*Id*. ¶¶ 24–38]. As of February 29, 2024, the date on which plaintiff filed suit, defendant had not provided records responsive to any of these three requests [*Id*. ¶¶ 27, 34, 38]. In its complaint, plaintiff asserts that it constructively exhausted its administrative remedies because, at that time, defendant had failed to make any determination on its FOIA requests within the statutorily prescribed period [*Id*. ¶¶ 39–46]. *See* 5 U.S.C. §§ 552(a)(6)(A)(i), (a)(6)(C)(i).

After plaintiff filed suit, defendant provided records responsive to the first and third FOIA requests.[1] Specifically, on March 14, 2024, defendant responded to plaintiff's December 2022 request, and on April 3, 2024, defendant responded to plaintiff's April 2023 request [Docs. 18-1–2]. On April 8, 2024, defendant filed the instant motion [Doc. 19], seeking dismissal as to Counts One and Three under Federal Rules of Civil Procedure 12(h)(3) and/or 12(c) due to its post-filing responses.

## II. Standard of Review

Federal Rule of Civil Procedure 12(h)(3) provides that "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Federal courts can adjudicate only those claims that are within the judicial power of the United States as defined in the Constitution and that have been entrusted to them by a jurisdictional grant of Congress. *Chase Bank USA, N.A. v. City of Cleveland*, 695 F.3d

---

[1] Defendant acknowledges that its response to plaintiff's second FOIA request is forthcoming and therefore does not move for dismissal of Count Two, which alleges FOIA violations related to plaintiff's March 2023 request [Doc. 20, p. 3 ("Only the first and third FOIA requests are at issue on this motion.")].

548, 553 (6th Cir. 2012). "A motion to dismiss brought under Rule 12(h)(3) is analyzed in the same manner as a motion to dismiss brought under Rule 12(b)(1)." *Tubbs v. Long*, No. 3:20-CV-477, 2022 WL 508895, at *3 (M.D. Tenn. Feb. 17, 2022), *aff'd*, No. 22-5127, 2022 WL 13983800 (6th Cir. Oct. 24, 2022) (quoting *Cohan v. MGM Hosp., Inc.*, No. 20-CV-10981, 2021 WL 4478744, at *1 (E.D. Mich. Sept. 30, 2021)) (citing *Berkshire Fashions, Inc. v. M.V. Hakusan II*, 954 F.3d 874, 879 n.3 (3d Cir. 1992)). "The distinction between a Rule 12(h)(3) motion and a Rule 12(b)(1) motion is simply that the former may be asserted at any time and need not be responsive to any pleading of the other party." *Id*. (quoting *Cohan*, 2021 WL 4478744, at *1) (citing *Berkshire Fashions*, 954 F.3d at 879 n.3). Where a Rule 12(c) motion is premised on an alleged lack of subject matter jurisdiction, the motion "merely serve[s] as an auxiliary device." 5C Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1367 3d ed. (2024).

When evaluating a so-called factual attack to subject matter jurisdiction, as in defendant's instant motion [*see* Doc. 20, p. 6 ("As a matter of fact, this Court lacks subject matter jurisdiction")], the Court can weigh evidence to confirm the existence of the factual predicates for subject matter jurisdiction. *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 440 (6th Cir. 2012). Unlike a facial attack, wherein a district court must accept the allegations of the complaint as true, "no presumptive truthfulness applies to the complaint's allegations; instead, the court must weigh the conflicting evidence to arrive at the factual predicate that subject-matter jurisdiction does or does not exist." *Tubbs*, 2022 WL 508895, at *3 (quoting *Gentek Bldg. Prods., Inc. v. Sherman-Williams Co.*, 491 F.3d 320, 330 (6th

3

Cir. 2007)). "[T]he district court has considerable discretion in devising procedures for resolving questions going to subject matter jurisdiction[.]" *Id*. (quoting *Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320, 327 (6th Cir. 1990)).

### III. Analysis

Defendant argues that the Court lacks subject matter jurisdiction over Counts One and Three because it "fully" responded to each of plaintiff's underlying FOIA requests after the filing of this suit [Doc. 20, p. 6]. Specifically, defendant contends that its responses to plaintiff have rendered these Counts moot in their entirety, thereby depriving the Court of the ability to grant meaningful relief [*Id*. at 6–7]. In support, it cites federal cases in which claims or parts of claims were deemed moot after an agency produced responsive documents during the pendency of litigation [*Id*. at 7–8].

Plaintiff responds that it explicitly alleged in its complaint that defendant failed to conduct an adequate search for documents and improperly withheld records that are non-exempt under FOIA; therefore, it contends that the Court retains subject matter jurisdiction over these unresolved issues [Doc. 25, pp. 2, 6]. Plaintiff cites case law supporting the proposition that federal courts typically retain jurisdiction in instances where an agency has produced some, but not all, of the requested documents [*Id*. at 5]. Additionally, it alleges several examples of potential deficiencies in defendant's responses, including the lack of information about the scope of its search for records, "conclusory" explanations for certain invoked exemptions, and improperly redacted material that may have been reasonably segregable from exempt material [*Id*. at 6–7].

4

In reply, defendant argues that plaintiff's allegations regarding the adequacy of its responses are premature because they have not been properly exhausted through administrative remedies [Doc. 28, p. 1]. Specifically, it contends that exhaustion of these remedies is a jurisdictional requirement in FOIA cases; so, its responses to plaintiff after the filing of this suit have deprived the Court of jurisdiction as to Counts One and Three [*Id*. at 2–3]. Additionally, it argues that the pleadings are bereft of plaintiff's specific allegations regarding defendant's improper withholdings or redactions [*Id*. at 4]. Finally, defendant proposes that the Court dismiss Counts One and Three to provide plaintiff with an opportunity to file an administrative appeal before seeking judicial review [*Id*. at 7].

Plaintiff filed two supplemental briefs during the pendency of the instant motion, both of which cite Memorandum Opinions from this Court ruling on the same procedural posture between the same litigants [Docs. 29, 31]. First, it cites *Southern Environmental Law Center v. Tennessee Valley Authority*, No. 3:24-CV-95 (E.D. Tenn. July 10, 2024) (unpublished) (Crytzer, J.) in which the Court granted in part and denied in part a similar motion to dismiss, allowing plaintiff's arguments regarding inadequate responses to proceed [Doc. 29, pp. 1–2]. Second, it cites *Southern Environmental Law Center v. Tennessee Valley Authority*, No. 3:24-CV-110, 2024 WL 5202758, at *1 (E.D. Tenn. Dec. 23, 2024) (Greer, J.) in which the Court denied a similar motion to dismiss [Doc. 31, pp. 1–2].

Defendant responded to plaintiff's first supplemental brief, arguing that United States District Judge Crytzer's Memorandum Opinion withheld further ruling on the issue

5

of standing and is therefore unhelpful to plaintiff here [Doc. 30, pp. 1–2]. It further submits that regardless of whether this suit is stayed or dismissed without prejudice, TVA's FOIA Appeals Official should have the opportunity to exercise his or her expertise to review plaintiff's appeal before further judicial review [*Id*. at 3]. In a footnote, defendant also states that plaintiff administratively appealed the FOIA request underlying Count One on June 10, 2024 [*Id*. at 2 n.2].[2]

### a. Timeliness of Defendant's Standing Arguments

Before analyzing the parties' arguments, the Court must address the procedural propriety of novel arguments raised in defendant's reply brief. The Local Rules of this District provide that "reply briefs are not necessary and are not required by the Court" and, if filed, they shall "directly reply to the points and authorities contained in the answering brief." E.D. Tenn. L.R. 7.1(c). "It is well-settled that a movant cannot raise new issues for the first time in a reply brief because consideration of such issues 'deprives the non-moving party of its opportunity to address the new arguments.'" *Malin v. JPMorgan*, 860 F. Supp. 2d 574, 577 (E.D. Tenn. 2012) (quoting *Cooper v. Shelby Cnty.*, No. 07–2283, 2010 WL 3211677, at *3 n.14 (W.D. Tenn. Aug. 10, 2010)). Judges Crytzer and Greer previously addressed a similar issue in their Memorandum Opinions cited by plaintiff. *See* Case No.

---

[2] Although defendant appears to attach a copy of this administrative appeal to its brief, Local Rule 7.1(d) states that "[n]o additional briefs, affidavits, or other papers in support of or in opposition to a motion shall be filed without prior approval of the Court[.]" While Rule 7.1(d) authorizes "a supplemental brief of no more than 5 pages" and a "response to a supplemental brief [that] shall be limited to no more than 5 pages," "other papers" attached to either of these forms of supplemental briefing are disallowed absent prior approval of the Court.

6

3:24-CV-95, Doc. 25, p. 9 ("But these significant issues will have to wait because Defendant raised them for the first time in its reply."); *S. Env't L. Ctr.*, 2024 WL 5202758, at *3 n.3 ("Defendant raised these arguments for the first time in its Reply. And it is well settled that a moving party cannot raise new issues for the first time in a reply brief.").

As in those cases, defendant appears here to raise new arguments in its reply brief, including much of its argument regarding plaintiff's exhaustion of administrative remedies [*Compare* Doc. 20, p. 3 ("Here, Plaintiff's claim of 'constructive exhaustion' is unavailing because Plaintiff's first and third FOIA requests—December 2022 and April 2023 requests—are moot.") *with* Doc. 28, p. 5 ("To challenge the adequacy of TVA's response, Plaintiff must exhaust administrative remedies *first*, before seeking judicial review.")]. In its response to plaintiff's first supplemental brief, defendant contends that even if these arguments are procedurally improper, "challenges to standing under Article III of the Constitution can be raised at any time—even in a reply brief" [Doc. 30, p. 2]. Although the word "standing" is notably absent from defendant's original motion [Doc. 19] and its opening brief [Doc. 20], to the extent it raises Article III standing challenges in its reply brief, the Court agrees that its obligation to consider such challenges is not diminished by procedural impropriety. *See* Fed. R. Civ. P. 12(h)(3). Moreover, because Article III standing is a Constitutional prerequisite, the Court must begin its analysis here.[3]

---

[3] Given that "[t]he Constitution's case-or-controversy limitation on federal judicial authority, Art. III, § 2, underpins both our standing and our mootness jurisprudence," a point of clarification is in order. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000). Although standing and mootness derive from the same Constitutional limitation, the United States Supreme Court has made clear that "the two inquiries differ in [critical] respects";

7

### b. Article III Standing

Defendant argues that plaintiff "did not have standing" to allege that defendant's responses were inadequate when filing suit because "TVA had yet to respond to the FOIA requests at issue here" [Doc. 28, pp. 1–2]. Defendant appears to take issue with the following allegations contained in the complaint (which are paralleled in Count Three):

> 50. TVA has violated FOIA by failing to conduct a reasonable search as is required by 5 U.S.C. § 552(a)(3)(C) for records responsive to SELC's December 2022 FOIA request.
> 51. TVA has violated FOIA by failing to provide SELC with all non-exempt records responsive to its December 2022 FOIA request.
> 52. By failing to make a determination, conduct a reasonable search, and provide SELC with all non-exempt records responsive to its December 2022 FOIA request, TVA has denied SELC's right to this information as provided by law under FOIA.
> 53. Unless enjoined by this Court, TVA will continue to violate SELC's legal right to be timely provided with the information requested in its December 2022 FOIA request.

[Doc. 1 ¶¶ 50–53]. Because defendant does not identify a particular facet of standing doctrine that it wishes to challenge and plaintiff was deprived of the opportunity to respond given the procedural impropriety of defendant's challenge (*see supra* Section III(a)), the Court will undertake a comprehensive assessment to ensure that this foundational jurisdictional requirement is satisfied. *See Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 607 (6th Cir. 2007).

To satisfy the "irreducible constitutional minimum" of Article III standing, a plaintiff must demonstrate (1) "injury in fact," (2) a "causal connection" between the injury

---

therefore, the Court will follow the example in *Laidlaw* by "address[ing] the question of standing before turning to mootness." *Id*.

and complained-of conduct, and (3) a likelihood "that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal quotation marks omitted). As to the first prong, "[t]he law is settled that 'a denial of access to information' qualifies as an injury in fact 'where a statute (on the claimants' reading) requires that the information 'be publicly disclosed' and there 'is no reason to doubt their claim that the information would help them.'" *Env't Def. Fund v. Env't Prot. Agency*, 922 F.3d 446, 452 (D.C. Cir. 2019) (quoting *Friends of Animals v. Jewell*, 824 F.3d 1033, 1040–41 (D.C. Cir. 2016)).

"Informational injury arises from a denial of information to which someone has a legal right." *Protect Our Aquifer v. Tenn. Valley Auth.*, 654 F. Supp. 3d 654, 686 (W.D. Tenn. 2023). As the United States District Court for the Western District of Tennessee recognized, courts have developed two tests for determining if a plaintiff demonstrates a concrete and particularized informational injury: whether "(1) it has been deprived of information that, on its interpretation, a statute requires the government or a third party to disclose to it, and (2) it suffers, by being denied access to that information, the type of harm Congress sought to prevent by requiring disclosure." *Id.* (quoting *Friends of Animals v. Jewell*, 828 F.3d 989, 992 (D.C. Cir. 2016)); *see also Fed. Election Comm'n v. Akins*, 524 U.S. 11, 21 (1998). Importantly, "[i]nformational injuries exist absent the denial of a request for particular information." *Animal Legal Def. Fund v. United States Dep't of Agric.*, 935 F.3d 858, 867 (9th Cir. 2019); *see Akins*, 524 U.S. at 21 (holding that a group

9

of voters had suffered a cognizable injury because they were denied information that the Federal Election Campaign Act required be made public).

The Court finds that plaintiff possesses Article III standing to bring this action. Implicit in defendant's standing challenge is the bifurcation of informational injuries arising from a single FOIA request—that is, the unlawful *delay* of an agency to produce records as distinct from the unlawful *inadequacy* of an agency's response. Because defendant distinguishes between these injuries, it asserts that each must first proceed through administrative appeal before seeking judicial review, even if a requester included in its original complaint, as here, an anticipatory request for relief from an agency's inadequate response prior to receiving said response. While this distinction has some intuitive appeal, it is notably absent from the FOIA scheme that Congress codified. Instead, the statute confers jurisdiction to district courts, *see* 5 U.S.C. § 552(a)(4)(B), without distinguishing between an agency's compliance with the timeframe clause of the FOIA, § 552(a)(6)(A)(i), and its compliance with the disclosure, reasonable search, and/ or exemption subparagraph(s), §§ 552(a)(3)(A), (a)(3)(C), (a)(8)(A). Nor does such a distinction appear in the administrative exhaustion clause, which refers broadly to "such request."[4] § 552(a)(6)(C)(i). In other words, the FOIA does not separately entitle plaintiff to timely production *or* adequate production; rather, it entitles plaintiff to timely, adequate

---

[4] Although this clause is triggered by an agency's failure "to comply with the applicable time limit provisions of this paragraph," § 552(a)(6)(C)(i), it deems exhausted all administrative remedies "with respect to such request."

production. *See id*. § 552(a)(3)(A) ("[U]pon any request for records . . . shall make the records promptly available to any person").

This consolidation occurs because informational injuries arise from the type of harm Congress sought to prevent by enacting the FOIA. *See Nat'l Sec. Archive v. Cent. Intel. Agency*, 104 F.4th 267, 272 (D.C. Cir. 2024) (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976)) (holding that FOIA provides informational standing "because it is 'designed to pierce the veil of administrative secrecy'"); *US Inventor Inc. v. Vidal*, No. 21-40601, 2022 WL 4595001, at *7 (5th Cir. Sept. 30, 2022) (citing *Bensman v. U.S. Forest Serv.*, 408 F.3d 945, 958 (7th Cir. 2005)) ("[A]n informational injury can arise from a statute (such as FOIA or FACA) that aims to provide information to the public and then clearly creates a right to such information"). "In enacting the FOIA, Congress sought 'to open agency action to the light of public scrutiny'" by requiring timely and adequate production. *Vaughn v. United States*, 936 F.2d 862, 865 (6th Cir. 1991) (quoting *Dep't of J. v. Reps. Comm. for Freedom of Press*, 489 U.S. 749, 772 (1989)); s*ee also* 5 U.S.C. § 552(a)(6)(C)(i) ("[T]he court may retain jurisdiction and allow the agency additional time to complete its review of the records."). Defendant's labyrinthine conception of the FOIA seems contradictory to the very purposes for which Congress enacted and subsequently amended this statute. Were the Court to take this argument to its logical conclusion, agencies could short-circuit judicial review through precisely the procedural dynamics of this case: force a requester to seek judicial review by failing to timely respond, disclose *some* requested material only after a suit is filed, and immediately move to dismiss any

11

potential challenge to the adequacy of the disclosure, itself, on grounds of subject matter jurisdiction. An agency acting in bad faith could deliberately disclose a single sentence of a single page from among thousands of actually responsive documents and remain immune from judicial review.

Contrary to this extreme hypothetical, defendant suggests that the upside of its interpretation of the FOIA is the opportunity for its own administrative appeals process to separately address timeliness and "merits" challenges [Doc. 30, p. 3]. Here again, the desirability of such a division of adjudicatory resources is immaterial because the FOIA's appeal clauses do not require this procedure. *See* 5 U.S.C. §§ 552(a)(6)(A)(i), (ii). The statute does, however, preserve the right of agencies to administratively adjudicate appeals when they respond within the specified timeframe. *Id*.

Having concluded that plaintiff has demonstrated an injury in fact by way of an informational injury, the remaining Article III requirements of causation and redressability are similarly satisfied. *See Lujan*, 504 U.S. at 560. It is unquestionable that defendant's determination as to which documents to produce and withhold causes plaintiff's informational injury, to the extent it exists. And this Court retains the power to redress this injury through the forms of declaratory and injunctive relief sought in plaintiff's complaint.

In sum, the Court concludes that plaintiff possesses Article III standing to bring its suit generally, and Counts One and Three specifically, based on the applicable doctrines of informational standing. Having addressed defendant's broad standing challenge, the Court

12

will now proceed to consider its remaining arguments regarding subject matter jurisdiction, namely the justiciability doctrine of mootness.

### c. Mootness

Because Article III circumscribes the jurisdiction of federal courts to "[c]ases" and "[c]ontroversies," U.S. Const. art. III, the mootness doctrine posits that federal courts must dismiss actions in which an actual controversy no longer exists. The United States Supreme Court initially described, "mootness as the 'doctrine of standing set in a time frame.'" *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980) (quoting H.P. Monaghan, *Constitutional Adjudication: The Who and When*, 82 Yale L.J. 1363, 1384 (1973)). However, in *Laidlaw*, the Court explained that "[this] description of mootness . . . is not comprehensive" because, among other things, "a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." 528 U.S. at 190. Such post-filing changes on the part of a defendant do not necessarily moot a case, "even if the plaintiff's primary injury is resolved, as long as the plaintiff continues to suffer some harm that a favorable court decision would remedy." Erwin Chemerinsky, *Federal Jurisdiction*, 136 6th ed. (2012).

The Supreme Court's recent decision in *New York State Rifle & Pistol Association, Incorporated v. City of New York*, 590 U.S. 336 (2020) is instructive as to this feature of mootness. There, petitioners sought declaratory and injunctive relief with respect to a New York City rule that, during the pendency of the litigation, was amended such that part of

petitioner's complaint was rendered moot.  *Id*. at 338.  As Justice Alito explained in his dissenting opinion, "[i]t is certainly true that the new City ordinance and the new State law give petitioners *most* of what they sought, but that is not the test for mootness.  Instead, 'a case becomes moot only when it is *impossible* for a court to grant *any effectual relief whatever* to the prevailing party.'  'As long as the parties have a concrete interest, *however small*, in the outcome of the litigation, the case is not moot.'"  *Id*. at 342–43 (Alito, J., dissenting) (emphasis in original) (internal quotation marks omitted) (quoting *Chafin v. Chafin*, 568 U.S. 165, 172 (2013)).  Similarly in the instant case, even if plaintiff has obtained some or most of what it sought, Counts One and Three are not moot so long as plaintiff retains some "concrete interest" in the claims' outcome.  *Id*. at 343 (quoting *Chafin*, 568 U.S. at 172).

Having already examined the nature of plaintiff's informational injury (*see supra* Section III(b)), the Court finds that Counts One and Three are not moot.  Plaintiff's complained-of injury is not *either* a delayed response *or* an inadequate response; rather, it broadly alleges that defendant has not complied with an informational statute.  Because plaintiff's complaint seeks defendant's comprehensive compliance with the FOIA statute, Counts One and Three could only be mooted if defendant had produced *every* document requested in unredacted form, thereby depriving plaintiff of any possible basis upon which to challenge the adequacy of its response.  *See GMRI, Inc. v. E.E.O.C.*, 149 F.3d 449, 451

14

(6th Cir. 1998)[5] (emphasis added) ("Once the [agency] turned over *everything* in its possession related to plaintiff's FOIA request, the merits of plaintiff's claim for relief, in the form of production of information, became moot.").

This approach is compatible with the non-binding authorities cited by defendant, each of which is distinguishable. First, in *Miller v. Federal Elections Commission*, No. 1:12-CV-242, 2013 WL 4243044, at *4 (S.D. Ohio Aug. 15, 2013), the United States District Court for the Southern District of Ohio noted that the plaintiff "concedes that the [agency] conducted an adequate search that was reasonably calculated to uncover all relevant documents," prior to holding that the plaintiff's claim was moot. Here, plaintiff does not concede these crucial points (*see supra* Section (I)). Second, in *Texas Roadhouse, Incorporated v. Equal Employment Opportunity Commission*, No. 3:14-CV-652, 2015 WL 925894, at *1 (W.D. Ky. Mar. 3, 2015), the United States District Court for the Western District of Kentucky deemed certain claims moot following agency production where the complaint alleged only that "the [agency] 'failed to provide either a determination regarding, or the documents responsive, to Plaintiffs' Funds Request,'" which is a much narrower claim that those raised in the instant complaint [*see, e.g.*, Doc. 1 ¶¶ 50–53]. Additionally, the *Texas Roadhouse* court was ruling on a motion brought under Fed. R. Civ. P. 12(b)(1) and, in the alternative, Rule 56. *Id*. at *1. So, unlike the instant case, that court received summary judgment briefing from the parties prior to issuing its ruling.

---

[5] The Court notes that while defendant argues *GMRI* "has no application here because exhaustion of administrative remedies was not an issue disputed or adjudicated," it cites the case here for its holding as to mootness only [Doc. 28, p. 3].

15

Third, in *Carson v. United States Office of Special Counsel*, No. 3:10-CV-57, 2011 WL 13311476, at *2 (E.D. Tenn. May 2, 2011), this Court dismissed as moot a *pro se* plaintiff's FOIA claim where his "*sole* claim against the [agency] is for delay or tardiness in responding." (emphasis added). Here, plaintiff's complaint contains more than solely a claim of delay [*see, e.g.*, Doc. 1 ¶¶ 50–53]. *See also Carson v. U.S. Merit Sys. Prot. Bd.*, No. 3:11-CV-399, 2012 WL 2562370, at *2 (E.D. Tenn. June 29, 2012) (dismissing a FOIA claim as moot where "the only claim stated in the complaint involved tardy processing of FOIA requests").

The Court also finds unpersuasive defendant's argument regarding the lack of detail contained in plaintiff's "conclusory allegations" [Doc. 28, p. 4]. In essence, defendant contends that because plaintiff's complaint does not specifically enumerate *ex ante* deficiencies in the yet-received responses from defendant, the Court cannot permit these claims to proceed [*See id*.]. In support, defendant cites *Engler v. Arnold*, 862 F.3d 571, 575 (6th Cir. 2017) for the proposition that the Court may only consider the factual matters contained in the complaint for purposes of ruling on a Rule 12(c) motion [*Id*.]. But as the Court already explained (*see supra* Section II), when evaluating a factual attack to subject matter jurisdiction, even if presented as a Rule 12(c) motion, the Court can weigh evidence to confirm the existence of the factual predicates for subject matter jurisdiction. *Carrier Corp.*, 673 F.3d at 440. In this context, unlike the non-jurisdictional motion under review in *Engler*, "the district court has considerable discretion in devising procedures for resolving questions going to subject matter jurisdiction[.]" *Tubbs*, 2022 WL 508895, at *3

16

(quoting *Ohio Nat. Life*, 922 F.2d at 327). So, the Court may—indeed must—consider the evidence adduced by both parties in addition to the complaint's allegations to determine whether an actual controversy remains. And, as a general matter, "[p]rocessing a request through a routine procedure has absolutely no bearing on whether the agency's ultimate decision to withhold the document was proper or improper." *Knight Pub. Co. v. U.S. Dep't of Just.*, 608 F. Supp. 747, 749 (W.D.N.C. 1984). Based on plaintiff's complaint and exhibits, the Court finds that potential issues remain in this controversy as to Counts One and Three.

## IV. Conclusion

For the reasons set forth above, defendant's Motion for Partial Dismissal for Lack of Subject Matter Jurisdiction [Doc. 19] is **DENIED**.

IT IS SO ORDERED.

                                        s/ Thomas A. Varlan
                                        UNITED STATES DISTRICT JUDGE