# Exhibit # 2

## (Declaration of Sherri R. Collins)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

SOUTHERN ENVIRONMENTAL
LAW CENTER,
Plaintiff,

No. 3:24-cv-00097-TAV-DCP

v.

TENNESSEE VALLEY AUTHORITY,
Defendant.

## <u>DECLARATION OF SHERRI R. COLLINS</u>

I, Sherri R. Collins, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury that the following is true and correct:

1.     I serve as an Assistant General Counsel within Tennessee Valley Authority's ("TVA") Office of the General Counsel (OGC). I have worked at TVA for approximately twenty-three years. In connection with my responsibilities as Assistant General Counsel, I provide legal counsel to TVA's Freedom of Information Act ("FOIA") Office related to TVA's compliance with and implementation of FOIA and TVA's FOIA regulations, 18 C.F.R. §§ 1301.1–.9.

2.     In my capacity as legal counsel to TVA's FOIA Office (the "FOIA Office"), I counsel and coordinate with the FOIA Office in processing FOIA requests and determining whether responsive records can be released in accordance with FOIA. As appropriate, I consult with TVA employees and review records for responsiveness and application of applicable FOIA exemptions.

3.     I make the statements herein based on personal knowledge and on information acquired by me in the course of performing my official job duties, including information provided to me by other knowledgeable personnel within TVA.

1

4.      I have reviewed the Complaint (Doc. 1) filed in this action which alleges claims with regard to three separate FOIA requests made by Southern Environmental Law Center ("SELC") to TVA:

1) FOIA request 23-FOI-00039 submitted on December 22, 2022 for records related to TVA's cooperation with the U.S. Environmental Protection Agency ("EPA") (Doc. 1-1, the "EPA FOIA request").

2) FOIA request 23-FOI-00096 submitted on March 15, 2023 for records related to the Cumberland Fossil Plant Retirement Final Environmental Impact Statement (Doc. 1-3, the "Final EIS FOIA request").

3) FOIA request 23-FOI-00112 submitted on April 20, 2023 for records of TVA's contractual agreement with Concentric Energy Advisors, Inc. ("Concentric") (Doc. 1-9, the "Concentric FOIA request").

5.      This Declaration explains TVA's decision to withhold responsive information and records with regard to those requests pursuant to FOIA Exemptions 3, 4, 5, and 6.

6.      FOIA Exemption 3, 5 U.S.C. § 552(b)(3), exempts information prohibited from disclosure by another statute. The information withheld by TVA under FOIA Exemption 3 in response to the Final EIS FOIA request is sensitive archaeological information protected from disclosure pursuant to the Archaeological Resources Protection Act of 1979.

7.      FOIA Exemption 4, 5 U.S.C. § 552(b)(4), exempts "trade secrets and commercial or financial information obtained from a person and privileged or confidential[.]" The information withheld by TVA under FOIA Exemption 4 in response to the Concentric FOIA request is commercial or financial information that is privileged or confidential and was submitted to TVA by Concentric.

2

8. FOIA Exemption 5, 5 U.S.C. § 552(b)(5), exempts "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency, provided that the deliberative process privilege shall not apply to records created 25 years or more before the date on which the records were requested[.]" The information withheld and/or redacted by TVA under FOIA Exemption 5 in response to the EPA FOIA request is information protected by the deliberative-process privilege. The information withheld by TVA under FOIA Exemption 5 in response to the Final EIS FOIA request is information protected by the deliberative-process privilege and/or attorney-client/attorney-work product privileges. The information withheld by TVA under FOIA Exemption 5 in response to the Concentric FOIA request is protected by the attorney-client/attorney-work product privileges.

9. FOIA Exemption 6, 5 U.S.C. § 552(b)(6), exempts "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy[.]" The information redacted by TVA under FOIA Exemption 6 in response to the three FOIA Requests consists of personal privacy information (e.g., names, email addresses, and phone numbers associated with individuals.

10. All information contained herein is based on information furnished to me in my official capacity and upon my personal review of the records at issue in this litigation.

## Overview of TVA's FOIA Process

11. The FOIA office processes and makes determinations on all FOIA requests including, upon receipt of a FOIA request, identification of the appropriate TVA business unit and/or personnel that may have responsive records. *See generally* 18 C.F.R. §§ 1301.3– 1301.5.

12. Determining whether TVA may have records responsive to a FOIA request and, if so, where responsive records are likely maintained is based on a review of the content of the request

3

itself, the nature of the records sought therein, and the FOIA office's familiarity with the type and location of records that may exist. *See* 18 C.F.R. §§ 1301.4, 1301.5.

13.     When appropriate, the FOIA office also searches its own processing system to determine whether similar or related FOIA requests previously have been received and processed by the agency. If a similar or related FOIA request is found from the same FOIA requester, the FOIA office refers the requester to previous FOIA responses and, in some instance, re-produces responsive records. This helps ensure the agency is not duplicating efforts unnecessarily, which in turn helps ensure record searches are conducted efficiently. *See* 18 C.F.R. §§ 1301.4, 1301.5.

14.     If the FOIA request does not involve records previously processed from a related FOIA request, the FOIA office will employ one or more search methods to identify potentially responsive records, including, for example, direct inquiries with, or document searches of, agency personnel most likely to possess responsive records, if any. *See* 18 C.F.R. §§ 1301.4, 1301.5. Specifically, the FOIA Office will identify the agency personnel who is "'familiar with the subject area of the request to locate the record with a reasonable amount of effort.'" *Am. Ctr. for L. & Just. v. D.H.S.*, 573 F.Supp.3d 78, 81 (D.D.C. 2021) (quoting *Truitt v. Dep't of State*, 897 F.2d 540, 545 n.36 (D.C. Cir. 1990)).

15.     Once the FOIA office collects the potentially responsive records from the agency personnel who is/are the custodians most familiar with the subject area of the FOIA request, it processes those records for responsiveness and the applicability of various FOIA exemptions.

**EPA FOIA Request**

16.     On December 22, 2022, SELC attorney Daniel Metzger submitted the EPA FOIA request related to the Cumberland Fossil Plant Draft EIS. (*See* Doc. 1-1.)

17.     As further explained in the Declaration of Julia Denise Smith (which I understand is being submitted contemporaneously herewith), TVA's FOIA Office processed and responded to the EPA FOIA request and provided SELC with three records in full and one record with partial redaction pursuant to FOIA Exemption 6, 5 U.S.C. § 552(b)(6). The agency also originally withheld thirteen records in whole pursuant to the deliberative process privilege under FOIA Exemption 5, 5 U.S.C. § 552(b)(5). (*See infra*, ¶ 33 (explaining that on April 22, 2025, the agency released two previously withheld records responsive to EPA Request and Final EIS Request).)

18.     FOIA Exemption 6 exempts "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy[.]" 5 U.S.C. § 552(b)(6). TVA partially redacted one record in response to the EPA FOIA request to withhold a TVA employee's mobile phone number because the disclosure of that information would constitute a clearly unwarranted invasion of that individual's personal privacy.

19.     The records withheld in full in response to the EPA FOIA request were withheld pursuant to FOIA Exemption 5 because each record contains predecisional and deliberative information that pre-date the final, published Cumberland Fossil Plant Environmental Impact Statement ("Cumberland FEIS"). As explained more fully below and in the attached *Vaughn* index (Attach. 1), the records withheld in full can be organized as follows:

- **Category 1**: Preliminary draft documents related to Cumberland Final EIS, including draft, preliminary versions of various sections and/or appendices for the Cumberland FEIS, and a draft document prepared by TVA National Environmental Policy Act (NEPA) Specialist.

- **Category 2**: NEPA coordination documents, including email correspondences among TVA employees and/or among TVA and EPA employees that contain

5

predecisional discussions and deliberations on draft versions of the Cumberland FEIS.

20. **Category 1** contains draft versions of various Cumberland FEIS sections and/or appendices. Each of these records are drafts and are non-final versions, subject to additional feedback and revisions as TVA staff worked to finalize the Cumberland FEIS for publication. TVA shared these draft records with EPA staff for the purpose of soliciting comments and feedback for TVA's consideration prior to the adoption of the final TVA policy reflected in the final, published Cumberland FEIS, which is available on TVA's website. Category 1 also includes one draft document prepared by TVA NEPA Specialist, Ashley Pilakowski. It is a two-page document that is in draft format with track change edits and comments discussing an August 2022 meeting with EPA staff. It contains information about the meeting in a predecisional and draft form, which was subject to change as evidenced by the track-change edits and does not reflect TVA's final view. Additionally, this document is deliberative because it reflects the give and take of TVA's internal consultative process, and this fact is evidenced by the comments made in the document by TVA NEPA Specialist Ashley Pilakowski. These comments are questions and statements regarding the contents of the draft, showing how TVA staff assessed the merits of certain viewpoints and articulates TVA's decision-making process.

21. **Category 2** contains email correspondence among TVA employees and/or among TVA and EPA employees, all of which contain predecisional discussions and deliberations regarding the ongoing drafting of various Cumberland FEIS sections and/or appendices. Each email record is predecisional as each predates the adoption of the final TVA policy reflected in the final, published Cumberland FEIS, which is available on TVA's website. Each email record contains ongoing discussions about EPA's review of draft sections of the Cumberland FEIS.

6

Additionally, each email record is deliberative as it shows the give and take of TVA's consultative process with the EPA. This shows the inter-agency assessment of the merits of various viewpoints as well as the articulation of TVA's process in ultimately deciding how to present the information in the final published Cumberland FEIS.

22.     The records identified in Categories 1 and 2 have been withheld in full pursuant to the deliberative process privilege under FOIA Exemption 5. Disclosure of the non-public and predecisional deliberative information included in the withheld records would inhibit TVA's decision-making processes; would discourage open, frank discussions among TVA employees and management because of the concern that their thoughts, opinions, analyses, and recommendations would be subject to review and criticism by the public; would inhibit the consultative process both with EPA staff and TVA employees; would constrain TVA employees in their future discussions, deliberations, and analyses such that TVA would not be able to render decisions based on thorough and unbiased information; and ultimately, would undermine the process of sound decision-making necessary for TVA to achieve its statutory mission including least-cost planning, 16 U.S.C. § 831m-1, and selling power "at rates as low as feasible," 16 U.S.C. § 831n-4(f).

23.     In addition, disclosure of materials containing preliminary or exploratory recommendations or actions not taken would inaccurately reflect the final views of TVA. Release of such material, given that TVA may not have adopted or acted upon some of the assumptions, data, and/or recommendations and edits, would compromise TVA's decision-making process by chilling open and frank discussions and exchange of information within TVA on decision-making and policy formulation and likely would cause and/or create the risk of causing public confusion from disclosure of reasons or rationales for TVA's deliberations and/or decision that ultimately

7

were rejected, modified, or otherwise not ultimately the grounds for TVA's final position as articulated in the final published Cumberland FEIS.

24. Therefore, TVA asserts the deliberative process privilege under FOIA Exemption 5 as to the records identified in Categories 1 and 2 because each record reflects pre-decisional assumptions, recommendations, data, and/or opinions. For example, if the candid recommendations and opinions of TVA staff were made public, these individuals would hesitate to share frank and constructive opinions, criticisms, and recommendations in the future on the fear that those opinions and recommendations would be made public, which would impair the overall quality of TVA's processes and deliberations. As a result, the disclosure of these records would result in foreseeable harm to TVA's consultative and deliberative processes that are a crucial aspect of informed decision making and are protected by FOIA Exemption 5.

25. Furthermore, the public release of draft documents and email communications with draft opinions, preliminary data, and recommendations that were not fully formed at the time or may contradict the final agency position on topics reflected in the final published Cumberland FEIS, would risk causing public confusion and/or be misunderstood without the proper context.

26. In sum, the release of the withheld EPA FOIA request records would result in foreseeable harm to the interests protected by Exemption 5 because it would inhibit TVA's processes by which it formulates agency policy and final positions on matters of public interest and would further inhibit TVA's ability to carry out its statutory mission, all of which the deliberative process privilege exists to prevent.

27. I have consulted with the FOIA Office and other relevant agency personnel, undertaken a careful review of the withheld records to review for segregability, and have

reasonably determined that all non-exempt information could be released for the EPA FOIA request.

28. Accordingly, in consultation with TVA's FOIA Officer, 18 U.S.C. § 1301.4(b), TVA asserts that the records have been properly redacted and/or withheld pursuant to FOIA Exemption 6 and the deliberative process privilege under FOIA Exemption 5, and as authorized under 5 U.S.C. § 552(a)(8).

## Final EIS Request

29. On March 15, 2023, SELC attorney Trey Bussey sought records relating to TVA's Cumberland Fossil Plant Retirement Final Environmental Impact Statement, the Final EIS FOIA request. (*See* Doc. 1-3.)

30. As further explained in Ms. Smith's declaration, the Final EIS FOIA request was narrowed, pursuant to SELC's agreement, to include responsive records included in an excel spreadsheet and the Cumberland project folder. (*See also* Doc. 1-7.) Because TVA did not have the technology and the staff to process the high volume of electronic records for review, TVA engaged a third-party e-Discovery vendor, Consilio, LLC ("Consilio"), to assist. (*See* Declarations of Julia Denise Smith and Marilyn White.)

31. After Consilio completed its processing of the potentially responsive records around December 2024, and in consultation with TVA's FOIA Office, I reviewed the potentially responsive records for appropriateness of release and any applicable FOIA exemptions.

32. Based on that review, and in consultation with TVA's FOIA Office, on February 10, 2025, TVA's FOIA Office responded to the Final EIS FOIA request and provided SELC with 31 records released in full, 15 records partially redacted pursuant to FOIA Exemptions 3 or 6, and withheld 139 records in full pursuant to FOIA Exemption 5. (Doc. 37-3.)

9

33. On April 22, 2025, TVA's FOIA Office released to SELC two records that were initially withheld. (Attach. 2.) (*See also*, *Vaughn* index, Attach. 1.)

34. Of the fifteen records partially redacted, one record contains redactions pursuant to FOIA Exemption 3, which protects against disclosure(s) prohibited by another statute. The information withheld by TVA under FOIA Exemption 3 is sensitive archaeological information protected from disclosure pursuant to the Archaeological Resources Protection Act of 1979.

35. Fourteen records have also been partially redacted pursuant to FOIA Exemption 6, which protects from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy[.]" 5 U.S.C. § 552(b)(6). The Exemption 6 redactions include mobile cell phone numbers and email addresses, the disclosure of which would qualify as a clearly unwarranted invasion of personal privacy. Moreover, the disclosure of this information would shed little to no light on the performance of the agency's statutory duties. Because the foreseeable harm to personal privacy is greater than whatever public interest may be served by disclosure, release of the information would constitute an unwarranted invasion of privacy of these individuals.

36. Furthermore, 137 records have been withheld in full under FOIA Exemption 5, because each record contains predecisional and deliberative information that pre-date the final published Cumberland FEIS. Several of these records are also protected by the attorney-client/attorney-work product privileges.

37. As explained more fully in the attached *Vaughn* index (Attach. 1), the 137 records withheld in full can be organized into the following categories and subcategories:

10

- Category 1: Preliminary Draft Documents Related to FEIS

  - Subcategory (1)(A): These records are draft, preliminary versions of various sections and/or appendices for the Cumberland FEIS. Each record was prepared prior to the agency's adoption of the final, published Cumberland FEIS, which is publicly available on TVA's website. These records are in draft form and contain deliberative and predecisional markers and in most instances, track change edits and comments from various TVA personnel. As a draft version, each record is a preliminary version subject to feedback and change.

  - Subcategory (1)(B): These records are draft, preliminary versions of various sections and/or appendices for the Cumberland FEIS. Specifically, these records include edits from attorneys, and in some instances, comments between clients and attorneys. Each record was prepared prior to the agency's adoption of the final, published Cumberland FEIS, which is publicly available on TVA's website. These records are in draft form and contain deliberative and predecisional markers and in most instances, track change edits and comments from various personnel, including outside counsel.

  - Subcategory (1)(C): These records are draft documents prepared in response to EPA's comments on the Cumberland FEIS, the final version of which is reflected in the final published Cumberland FEIS, Appendix P, and is publicly available on TVA's website. These records are in draft form and contain deliberative and predecisional markers and

11

in most instances, track change edits and comments from various TVA personnel. As a draft version, each record is a preliminary version subject to feedback and change.

- o Subcategory (1)(D): These records are draft versions of the Record of Decision (ROD) for the Cumberland FEIS, the final version of which is publicly available on TVA's website. These records are in draft form and contain deliberative and predecisional markers and in most instances, track change edits and comments from various TVA personnel. As a draft version, each record is a preliminary version subject to feedback and change.

- o Subcategory (1)(E): These records are draft versions of the Cumberland FEIS ROD or Errata, the final versions of which are publicly available on TVA's website. These records are in draft form and contain deliberative and predecisional markers and in most instances, track change edits and comments from various personnel, including outside counsel. As a draft version, each record is a preliminary version subject to feedback and change. Further, some records include track-change edits from attorneys, and in some instances, comments between clients and attorneys.

- o Subcategory (1)(F): These records are miscellaneous draft versions of documents prepared in relation to the agency's drafting of the Cumberland FEIS. These records include draft responses to comments, draft memos, draft archaeological letters and reports, draft board

12

briefings/resolutions, and draft internal awareness notifications. These records are in draft form and contain deliberative and predecisional markers and in most instances, track change edits and comments from various TVA personnel. As a draft version, each record is a preliminary version subject to feedback and change and may not reflect the agency's final decision or position on any given topic.

- Category 2: NEPA Coordination
  - o Subcategory (2)(A): These records include various email communications, including TVA's inter-agency communications with EPA staff, as well as intra-agency TVA NEPA Core Team meeting agendas, and/or staff notes, all of which relate to TVA's ongoing drafting and coordination of the Cumberland FEIS. Each record was prepared prior to the agency finalizing the Cumberland FEIS and contains staff impressions, and in some instances, recommendations on potential next steps for drafting the Cumberland FEIS.
  - o Subcategory (2)(B): These records contain internal management briefings prepared prior to the agency's adoption of the Cumberland FEIS. These records include various preliminary management issue/summary briefings, preliminary recommendation papers, and internal change control notices, all of which were drafted during the agency's ongoing preparation of the Cumberland FEIS and reflect ongoing agency deliberations regarding the Cumberland FEIS.

13

o Subcategory (2)(C): These records include various legal briefings/memos prepared by TVA's OGC Attorneys and/or outside counsel related to the agency's drafting of the Cumberland FEIS. One record is an email communication that includes one attachment (Alternatives Generation by Asset Group.xls) between TVA NEPA Staff and a TVA OGC Attorney regarding the agency's ongoing drafting of certain sections of the Cumberland FEIS.

o Subcategory (2)(D): These records include internal TVA staff concurrence sheets for the Cumberland FEIS, ROD, and Errata. These records were prepared in advance of the agency's final published Cumberland FEIS and contain preliminary staff impressions.

38. The records identified in Categories 1 and 2 have been withheld in full pursuant to the deliberative process privilege, attorney-client privilege, and/or attorney work product privileges under Exemption 5. *See* Attach. 1.

### *Deliberative Process Privilege*

39. As to TVA's withholding pursuant to the deliberative process privilege, disclosure of the non-public and predecisional deliberative information included in the withheld records would inhibit TVA's decision-making processes; would discourage open, frank discussions among TVA employees and management because of the concern that their thoughts, opinions, analyses, and recommendations would be subject to review and criticism by the public; would inhibit the consultative process among TVA employees, including TVA's assessment of the merits of contrasting viewpoints; would constrain TVA employees in their future discussions, deliberations, and analyses such that TVA would not be able to render decisions based on thorough and unbiased

information; and ultimately, would undermine the process of sound decision-making necessary for TVA to achieve its statutory mission including least-cost planning, 16 U.S.C. § 831m-1, and selling power "at rates as low as feasible," 16 U.S.C. § 831n-4(f).

40. In addition, disclosure of materials containing preliminary or exploratory recommendations or actions not taken would inaccurately reflect the final views of TVA. Release of such material, given that TVA may not have adopted or acted upon some of the assumptions, data, and/or recommendations, would compromise TVA's decision-making process by chilling open and frank discussions and exchange of information within TVA on decision-making and policy formulation and likely would cause and/or create the risk of causing public confusion from disclosure of reasons or rationales for TVA's deliberations and/or decision that ultimately were rejected, modified, or otherwise not ultimately the grounds for TVA's final position as articulated in the final published Cumberland FEIS.

41. Therefore, TVA asserts the deliberative process privilege under FOIA Exemption 5 as to the documents identified in Categories 1 and 2 because each record reflects pre-decisional assumptions, recommendations, data, and/or opinions of TVA staff. For example, if the candid recommendations and opinions of TVA staff were made public, these individuals would hesitate to share frank and constructive opinions, criticisms, and recommendations in the future on the fear that those opinions and recommendations would be made public, which would impair the overall quality of TVA's processes and deliberations. As a result, the disclosure of these records would result in foreseeable harm to TVA's consultative and deliberative processes that are a crucial aspect of informed decision making and are protected by FOIA Exemption 5.

42. Furthermore, the public release of any of the withheld records that contain draft opinions, preliminary data, internal coordination documents, and/or recommendations that were

15

not fully formed at the time or may contradict the final agency position on topics reflected in the final published Cumberland FEIS, would cause public confusion and/or be misunderstood without the proper context.

43. In sum, the release of the withheld records would result in foreseeable harm to the interests protected by Exemption 5 because it would inhibit TVA's processes by which it formulates agency policy and final positions on matters of public interest and would further inhibit TVA's ability to carry out its statutory mission, all of which the deliberative process privilege exists to prevent.

*Attorney-Client/Attorney-Work Product Privileges*

44. As to TVA's withholdings pursuant to the attorney-client privilege and attorney-work product privileges under Exemption 5, disclosure of the privileged and confidential communications and work product between TVA staff, TVA attorneys, and outside counsel attorneys as part of the agency's preparation of the Cumberland FEIS would cause foreseeable harm to TVA. As an attorney who frequently works with many of these internal TVA employee clients, I am aware that the attorney-client privilege holds a prominent and sacrosanct role in the law, is one of the oldest privileges available at common law, and is important to the internal TVA clients who work with attorneys in the Office of the General Counsel and depend upon their legal advice on a daily basis. Thus, routine disclosure of confidential communications between attorneys and their clients (here, TVA) would undermine one of the bedrock principles of the legal profession, as clients (TVA employees) would not feel comfortable asking their attorneys for legal advice and attorneys would not feel comfortable providing it if such communications were not kept confidential. If privileged and confidential legal advice and information shared between TVA personnel, TVA's attorneys, and outside counsel were disclosed, this would chill the open and

16

frank communications between attorney and client and negatively impact agency personnel's ability to confidentially consult lawyers on matters for which they seek legal advice. This, in turn, would undermine the agency's ability to secure legal advice and counsel which would cause foreseeable harm to TVA's ability to obtain advice and counsel on matters important to TVA's operations and mission.

45.     In sum, the release of the withheld records would result in foreseeable harm to the interests protected by Exemption 5 because it would inhibit TVA's processes by which it formulates agency policy and final positions on matters of public interest and would further inhibit TVA's ability to carry out its statutory mission, which is contrary to public interest, all of which the attorney-client privilege exists to prevent.

46.     I have consulted with TVA's FOIA Officer and other relevant agency personnel, undertaken a careful review of the withheld records to review for segregability, and have reasonably determined that all non-exempt information could be released for the Final EIS FOIA request.

47.     Accordingly, in consultation with TVA's FOIA Officer, 18 U.S.C. § 1301.4(b), TVA asserts that the Final EIS FOIA request records have been properly redacted and/or withheld pursuant to FOIA Exemptions 3 or 6 and/or the deliberative process privilege, attorney-client/attorney-work product privileges under FOIA Exemption 5, and as authorized under 5 U.S.C. § 552(a)(8).

**<u>Concentric FOIA Request</u>**

48.     On April 20, 2023, SELC attorney Trey Bussey submitted a FOIA request to TVA for all records of TVA's contractual agreement with Concentric Energy Advisors, Inc. ("Concentric") related to Concentrics's October 3, 2022 report titled "Assessment of the Draft

Environmental Impact Study and Response to Certain Reports," the Concentric FOIA request (*See* Doc. 1-9.).

49. As further explained in Ms. Smith's declaration, the FOIA office processed the Concentric FOIA request and provided SELC with three records with partial redactions pursuant to FOIA Exemptions 4, 5, and 6.

50. FOIA Exemption 4, 5 U.S.C. § 552(b)(4), exempts "trade secrets and commercial or financial information obtained from a person and privileged or confidential[.]" The information withheld by TVA under FOIA Exemption 4 in response to the Concentric FOIA request is commercial or financial information that is privileged or confidential and was submitted to TVA by Concentric.

51. Concentric specifically requested that TVA withhold Concentric's confidential commercial information from the redacted records (*see* Attach. 3), including certain contract provisions and billing rates, such as:

- Total contractual payment amounts, billing rates, pricing sheets, and contract price adjustments, as each contains the total contract amount and billing rates, amounts, and calculations;

- Insurance, indemnity, patents/copyright, and warranties provisions, as each contains commercial sensitive terms that Concentric routinely and ordinarily keeps confidential; and

- Applicable law subsection as it contains sensitive commercial information about Concentric's scope of work obligations in the event of changed or new Applicable laws.

52. Concentric formally objected to the release of the above-mentioned information because the release of such information would result in significant harm to Concentric's

competitive interests and could promise its ability to conduct business effectively. Specifically, Concentric informed TVA that the disclosure of the redacted confidential commercial information could impact Concentric's ability to negotiate fair compensation for its services and could undermine Concentric's financial viability. It could also provide competitors with sensitive information about Concentric's pricing strategies, negotiation tactics, and client relationships, which would result in unfair competitive advantages for other businesses operating in the same industry. As a private entity, Concentric has a legitimate interest in protecting sensitive business information from public disclosure, particularly when such disclosure could harm its commercial interests.

53. Certain information has also been redacted in two of the records pursuant to FOIA Exemption 5, attorney-client privilege and attorney work-product privileges. For example, the scope of work has been redacted as it contains confidential provisions regarding the scope of legal work TVA's Office of the General Counsel hired and contracted with Concentric. Concentric's consulting work was performed at the request of TVA's legal counsel and in preparation for potential litigation. Consilio's work may be used by TVA to develop a strategy for potential or actual litigation.

54. I advised TVA's FOIA Office related to Concentric's objections to disclosure, and TVA's FOIA Office concluded that Concentric (1) provided a reasonable, good-faith basis for its request under FOIA Exemption 4 and TVA's FOIA regulations, 18 C.F.R. §§ 1301.7, 1301.8, not to disclose the above-referenced information; and (2) made a credible, good-faith showing that disclosure of the above-referenced information would pose reasonably foreseeable harm to the interests protected by FOIA Exemption 4.

19

55. Moreover, disclosing attorney-client communications would foreseeably harm TVA by causing a chilling effect on the attorney client relationship and open communications. Disclosure of such confidential communications would harm the attorney client relationship. Moreover, the attorney-work product privilege also under Exemption 5 protects documents and other memorandum prepared by an attorney in contemplation of litigation and can include information created under the consultant corollary. The disclosure of attorney work product information included herein would foreseeably harm an interest protected under FOIA Exemption 5 by harming the adversarial trial process by exposing the attorney's preparation to public scrutiny.

56. Finally, certain information has been redacted in one record pursuant to FOIA Exemption 6 because it contains the names, mobile cell phone numbers, and email addresses of certain TVA Office of the General Counsel and Concentric employees. This information has been redacted because it is direct personal contact information, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy. The withheld information is within the scope of "personnel and medical files and similar files" because the information applies to and is identified with a particular individual. This personal information is withheld to avoid unsolicited communications. The withheld information does not shed light on the agency's performance of its duties and the harm to the individual as a result of any disclosure clearly outweighs the public interest in such a disclosure.

57. In sum, the release of any of the redacted information in the three partially redacted records would result in foreseeable harm to the interests protected by Exemptions 4, 5, and 6 because it would inhibit TVA's ability to carry out its statutory mission, which is contrary to public interest.

58.     I have consulted with TVA's FOIA Officer and other relevant agency personnel, undertaken a careful review of the withheld records to review for segregability, and have reasonably determined that all non-exempt information could be released for the Concentric FOIA request.

59.     Accordingly, in consultation with TVA's FOIA Officer, 18 U.S.C. § 1301.4(b), TVA asserts that the Concentric FOIA request records have been properly redacted pursuant to FOIA Exemptions 4, 5, and/or 6 and as authorized under 5 U.S.C. § 552(a)(8).

Executed on May 2, 2025, in Knox County, Tennessee.

Collins, Sherri R.
Digitally signed by Collins, Sherri R.
Date: 2025.05.02 14:53:31 -04'00'

Sherri R. Collins
Assistant General Counsel
Tennessee Valley Authority

129914035