UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

SOUTHERN ENVIRONMENTAL
LAW CENTER,
Plaintiff,

v.                                             No. 3:24-cv-00097-TAV-DCP

TENNESSEE VALLEY AUTHORITY,
Defendant.

---

**BRIEF IN SUPPORT OF TENNESSEE VALLEY AUTHORITY'S
CROSS-MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT**

---

David D. Ayliffe (TN BPR 024297)
Associate General Counsel
Steven C. Chin (TN BPR 030011)
Sydney D. Nenni (TN BPR 038898)
Office of the General Counsel
Tennessee Valley Authority
400 West Summit Hill Drive
Knoxville, Tennessee 37902-1401
Telephone 865.632.3052
scchin@tva.gov

Attorneys for Tennessee Valley Authority

**TABLE OF CONTENTS**

Page

INTRODUCTION .................................................................................................................1

    BACKGROUND ........................................................................................................2

    LEGAL STANDARDS .............................................................................................4

        A.      The Freedom of Information Act.................................................................4

        A.      The FOIA Improvement Act.......................................................................4

        C.      Summary Judgment Standard. ....................................................................5

    ARGUMENT.............................................................................................................6

I.       TVA Reasonably Interpreted Plaintiff's Three FOIA Requests and Conducted Reasonable Searches Based on Those Interpretations..........................6

        A.      TVA Conducted a Reasonable Search for Records on the EPA Request.......................................................................................................7

        B.      TVA Conducted a Reasonable Search for Records on the Final EIS Request.......................................................................................................9

                1.      TVA Correctly Interpreted Plaintiff's Final EIS Request for "All Records" to Relate Only to "Final" Cumberland EIS..............9

                2.      TVA Properly Narrowed the Search Based on Plaintiff's Agreement on the Locations of Potentially Responsive Records. .................................................................................................10

                3.      Plaintiff's Claim that Certain Records *Should* Exist is Based on Speculation and Does Not Render TVA's Search Unreasonable................................................................................13

        C.      TVA Conducted a Reasonable Search for Records on the Concentric Request.....................................................................................14

II.      TVA Properly Withheld Records Under FOIA Exemptions 4 and 5. ...................16

        A.      TVA Properly Applied FOIA Exemption 5 to the Records Withheld in TVA's Response to the EPA and the Final EIS Requests. ....................16

                1.      The Collins Declaration and the *Vaughn* Index Are Wholly Sufficient to Support TVA's Withholding of Information Under FOIA Exemption 5...........................................................17

2. The Category-By-Category Explanation of Foreseeable Harm in the Collins Declaration and the *Vaughn* Index Provides Sufficient Detail to Support TVA's Withholding Under the FIA. ..............................................................19

B. TVA Properly Applied FOIA Exemption 4 to the Records Withheld in TVA's Response to the Concentric Request..........................................21

1. The Information Concentric Provided Was Confidential, Commercial Information...............................................................21

2. Concentric's Confidential, Commercial Information Withheld Was Obtained From a Person.......................................23

3. TVA and Concentric Articulated the Requisite Foreseeable Harm Under the FIA. ...................................................................24

C. TVA Has Properly Released All Reasonably Segregable Information. ......................................................................................25

CONCLUSION....................................................................................................25

Case 3:24-cv-00097-TAV-DCP    Document 43    Filed 05/05/25    Page 3 of 30    PageID #: 527

# INTRODUCTION

This case arises out of Plaintiff Southern Environmental Law Center's ("Plaintiff" or "SELC") Complaint under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, which claims that TVA violated FOIA regarding three separate FOIA requests related to TVA's Cumberland Fossil Plant Retirement Environmental Impact Statement ("Cumberland EIS"). Defendant Tennessee Valley Authority ("TVA") respectfully submits this brief in support of TVA's cross-motion for summary judgment on Plaintiff's Complaint and in opposition to Plaintiff's motion for summary judgment.

Plaintiff's first FOIA request sought records related to TVA's cooperation with the U.S. Environmental Protection Agency ("EPA") on the Cumberland EIS ("EPA Request"). The second request sought records related to the final Cumberland EIS ("Final EIS Request"). The third request sought records of TVA's contractual agreement with Concentric Energy Advisors, Inc. ("Concentric") related to Concentric's "Assessment of the [Cumberland] Draft Environmental Impact Study and Response to Certain Reports" ("Concentric Request") (collectively, the "FOIA Requests" or "Requests"). Plaintiff acknowledges that two claims remain: "(1) whether TVA conducted an adequate search for records responsive to SELC's FOIA requests; and (2) whether TVA properly withheld records under FOIA exemptions."[1] (Pl.'s Br. in Support of Mot. for Summ. J., Doc. 39 at PageID#438.)

For the reasons stated below and as outlined in the four detailed declarations and *Vaughn* Index submitted in support of this cross-motion and opposition, TVA reasonably interpreted the

---

[1] To the extent that Plaintiff seeks judicial relief beyond the exercise of jurisdiction on its procedural claim of constructive exhaustion, the Court cannot grant Plaintiff any further relief. *See SELC v. TVA*, No. 3:24-cv-117-KAC-DCP, -- F.Supp.3d --, 2025 WL 1037248 (E.D. Tenn. March 26, 2025); *Conley v. ICE*, No. 3:23-cv-128-TVA-JEM, 2024 WL 4254330, at *4 (E.D. Tenn. Sept. 20, 2024).

scope of Plaintiff's FOIA Requests based on the plain language of the three requests, FOIA's requirement that a FOIA request must be reasonably described, and the written communications between the parties. Thereafter, TVA conducted searches reasonably calculated to uncover records responsive to the FOIA Requests and properly withheld responsive records under FOIA Exemptions 3, 4, 5 and 6.[2] Because TVA fulfilled its obligations under FOIA and the FOIA Improvement Act ("FIA"), the Court should deny Plaintiff's motion for summary judgment and grant TVA's cross-motion for summary judgment.

## BACKGROUND

On December 22, 2022, Plaintiff submitted its EPA Request seeking "all records relating to TVA's cooperation with the [EPA] on issues in the Cumberland [] draft EIS." (Doc. 1-1 at PageID#15.) On March 14, 2024, TVA responded to the EPA Request. (Doc. 37-1; Smith Decl. ¶ 12.) On June 10, 2024, SELC filed an administrative appeal with TVA's FOIA Appeals Officer, who upheld the TVA FOIA Office's initial determination. (Doc. 30-1; Smith Decl. ¶¶ 13, 14.)

On March 15, 2023, Trey Bussey, an attorney for SELC, submitted its Final EIS Request seeking "[a]ll records related to the Cumberland [] Final [EIS] (except for records cited in the Final [EIS] or Record of Decision that are easily retrievable through TVA's website[.]" (Doc. 1-3 at PageID#20.) Because the Final EIS Request encompassed vast amounts of records, Ms. Smith reached out to Mr. Bussey to narrow this request. (Smith Decl. ¶ 19.) Ms. Smith provided two illustrations to Mr. Bussey where potentially responsive records may be located: (1) an "excel spreadsheet" that described a draft version of files in the administrative record for the Cumberland

---

[2]     Plaintiff's motion for summary judgment challenges TVA's withholding records only with respect to FOIA Exemptions 4 and 5, and thus, Plaintiff has waived any challenge under Exemptions 3 and 6. (Doc. 39 at PageID#438.) For a discussion of why TVA withheld records pursuant to Exemptions 3 and 6, *see* Declaration of Ms. Collins. (Collins Decl. ¶¶ 17, 18, 28, 32, 34, 35, 49, 56, and 58.)

Final EIS; and (2) a screenshot of folders in the Cumberland Retirement folder (hereinafter, the "Project Folder") and recommended that it would be "helpful and speed up processing if we could narrow or focus [SELC's] request" on records from the spreadsheet or from the project folders. (*Id.* ¶ 20; *see also* Doc. 1-7 at PageID#30.) Mr. Bussey agreed that TVA "could narrow [the] Cumberland request by excluding all documents listed in the attached Excel spreadsheet except" for certain enumerated documents but "[w]ith respect to the screenshot folders," Plaintiff was "unable to narrow the request to exclude any of those folders." (Smith Decl. ¶ 21; Doc. 1-7 at PageID#30.) Thereafter, TVA's FOIA Office processed the FOIA request pursuant to the understanding that SELC had agreed to narrow the scope of the Final EIS FOIA request as reflected in the excel spreadsheet (as specified by SELC) and the Project Folder. (Smith Decl. ¶ 22.) Because TVA does not have the technology to process high volumes of electronic records, TVA engaged Consilio, LLC ("Consilio") to assist in the data processing and electronic document review of the Project Folder, which contained over 2,400 potentially responsive records.[3] (Smith Decl. ¶ 25; White Decl. ¶¶ 4-8.) On February 10, 2025, TVA responded to this request and amended its Answer. (Docs. 37, 37-3.)

---

[3]  Plaintiff frequently complains about the delays in TVA's processing of these three FOIA requests without acknowledging the fact that Plaintiff has submitted over 68 extremely broad and complex FOIA requests to TVA since January 1, 2023 (Smith Decl. ¶ 24 n.2) and has filed seven FOIA lawsuits, including this one, against TVA between 2022 and 2024. *See SELC v. TVA*, No. 3:22-cv-00108, 659 F.Supp.3d 902 (E.D. Tenn. 2023) (granting summary judgment in favor of TVA); *SELC v. TVA*, No. 3:23-cv-00017-TAV-DCP (Varlan, J.) (voluntarily dismissed); *SELC v. TVA*, No. 24-cv-0095-KAC-DCP (Crytzer, J.); *SELC v. TVA*, Case No. 24-cv-0097-TAV-DCP (Varlan, J.); *SELC v. TVA*, No. 24-cv-0110-JRG-DCP (Greer, J.); *SELC v. TVA*, No. 24-cv-0117-KAC-DCP (Crytzer, J.); and *SELC v. TVA*, No. 24-cv-0494-TAV-DCP (Varlan, J.).

Processing this many broad FOIA requests on top of the substantial number of FOIA requests TVA receives from other submitters takes time, and TVA processes these requests in the order they are received in accordance with TVA's FOIA regulations. Plaintiff is not entitled to preferential treatment or faster processing times simply by engaging in frequent filer tactics.

3

On April 20, 2023, Plaintiff submitted its Concentric Request seeking "[a]ll records of TVA's contractual agreement with Concentric [], related to Concentric's October 3, 2022 report entitled 'Assessment of the Draft Environmental Impact Study and Response to Certain Reports.'" (Doc. 1-9 at PageID#37.) On April 3, 2024, TVA responded to the Concentric Request after receiving Concentric's response to TVA's submitter notice. (Doc. 37-2.)

**LEGAL STANDARDS**

### A.    The Freedom of Information Act.

FOIA provides a mechanism for the public to access certain records from federal agencies, including TVA, 5 U.S.C. § 552, and "represents a balance struck by Congress between the public's right to know and the government's legitimate interest in keeping certain information confidential." *Ctr. for Nat'l Sec. Stud. v. U.S. Dep't of Justice*, 331 F.3d 918, 925 (D.C. Cir. 2003) (citing *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989)). While FOIA requires disclosure under certain circumstances, "Congress recognized [ ] that public disclosure is not always in the public interest[.]" *CIA v. Sims*, 471 U.S. 159, 166–67 (1985). Agency records that fall within one of the nine enumerated exemptions, 5 U.S.C. § 552(b)(1)–(9), need not be disclosed. And "FOIA expressly recognizes that important interests are served by its exemptions, and those exemptions are as much a part of FOIA's purposes and policies as the statute's disclosure requirement." *Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 439 (2019) (cleaned up).

### A.    The FOIA Improvement Act.

The FOIA Improvement Act ("FIA") provides that an agency may withhold information pursuant to a FOIA exemption "only if the agency reasonably foresees that disclosure would harm an interest protected by an exemption . . . or disclosure is prohibited by law." 5 U.S.C. §552(a)(8)(A)(i). "Congress added the foreseeable harm requirement to the FIA to foreclose the withholding of material unless the agency can articulate both the nature of the harm from release

and the link between the specified harm and specific information contained in the material withheld." *SELC v. TVA*, 659 F.Supp.3d 902, 918 (E.D. Tenn. 2023) (cleaned up). "The agency must provide a focused and concrete demonstration of why disclosure of the particular type of material will, in the specific context of the agency action at issue, 'actually impede those same agency [actions] going forward.'" *Id.* (quoting *Machado Amadis v. U.S. Dep't of State*, 971 F.3d 364, 371 (D.C. Cir. 2020)). Moreover, the question for the Court is only whether the "disclosure would cause foreseeable harm [to those interests protected by the exemption] and not the gravity of harm potentially caused by disclosure." *Id.* at 918–19 (citing 5 U.S.C. § 552(a)(8)(A)(i)(I)).

### C. Summary Judgment Standard.

Summary judgment is appropriate when there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Summary judgment is the procedural vehicle by which nearly all FOIA cases are resolved, "[a]s most challenges to an agency's use of a FOIA exemption involve purely legal questions[.]" *Rimmer v. Holder*, 700 F.3d 246, 255 (6th Cir. 2012).

First, the court must determine whether the agency has made "reasonable efforts to search for the records" requested by the plaintiff. *See* 5 U.S.C. § 552(a)(3)(C); *see also Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994). Second, if an agency's search locates records responsive to a request, the court determines whether the government has properly withheld records or information under any of FOIA's exemptions. *See* 5 U.S.C. § 552(a)(4)(B). "To prevail on summary judgment, the government must show that it made a 'good faith effort to conduct a search for the requested records using methods reasonably expected to produce the requested information' and that any withholding of materials was authorized within a statutory exemption." *Rimmer*, 700 F.3d at 255 (quoting *CareToLive v. FDA*, 631 F.3d 336, 340 (6th Cir. 2011)). An agency's declaration describing how it searched for responsive records is entitled to a presumption

5

of good faith, and courts routinely rely on these declarations to resolve FOIA disputes. *CareToLive*, 631 F.3d at 340–41.

**ARGUMENT**

**I.      TVA Reasonably Interpreted Plaintiff's Three FOIA Requests and Conducted Reasonable Searches Based on Those Interpretations.**

TVA has met its obligations under FOIA to conduct reasonable searches for records responsive to the FOIA Requests. An agency's search for documents in response to a FOIA request is judged by a "reasonableness standard," *Mobley v. CIA*, 806 F.3d 568, 580 (D.C. Cir. 2015), which asks whether the search was "reasonably calculated to discover the requested documents, not whether it actually uncovered every document extant." *CareToLive*, 631 F.3d at 336, 340 (citations omitted). The agency's "search need not be perfect, only adequate, and adequacy is measured by the reasonableness of the effort in light of the specific request." *Kohake v. Dep't of Treasury*, 630 F. App'x 583, 587 (6th Cir. 2015). And, that specific request must "reasonably describe[]" the records requested as required under FOIA. 5 U.S.C. § 552(a)(3)(A)(i). Here, the detailed Declarations of Denise Smith, Sherri Collins, Ashley Pilakowski, and Marilyn White (Docs. 42-1, 42-4, 42-8, and 42-9) demonstrate the adequacy and reasonableness of TVA's reasonable interpretations of and searches for records responsive to the FOIA Requests.

Yet Plaintiff advances two sweeping arguments that TVA failed to conduct an adequate search. First, Plaintiff claims that "TVA has provided no information about the scope of its search" and, second, they contend that "the record indicates that TVA possesses other non-exempt responsive records that a reasonable search should have uncovered." (Doc. 39 at PageID#440.) Neither argument has merit.

Plaintiff's first argument jumps the gun on its arguments that TVA failed to conduct an adequate search (*Id.* at PageID##440–42.) TVA had no obligation to provide Plaintiff with

6

information about the scope of the search unless and until TVA was required to provide a detailed declaration in the course of litigation, which it does here with the detailed declarations of Smith, White, Pilakowski, and Collins (Docs. 42-1, 42-4, and 42-8). As further explained below, Plaintiff presented insufficient evidence to call into question the adequacy of TVA's searches.

Plaintiff's second argument that the "record indicates that TVA possesses other non-exempt responsive records that a reasonable search should have uncovered" (Doc. 39 at PageID#440) assumes either TVA failed to uncover a record or that TVA is improperly withholding a discovered record. Neither assumption is true. This argument is based on speculation, which cannot overcome the presumption of good faith afforded to an agency's declaration.

### A.      TVA Conducted a Reasonable Search for Records on the EPA Request.

Regarding Plaintiff's EPA Request, TVA's FOIA Officer, Ms. Smith, declared that she reached out to Susan Jacks, General Manager, Federal Mandates and Environmental Compliance; Dawn Booker, Senior Manager, National Environmental Policy Act ("NEPA") Compliance; and Ashley Pilakowski and Chevales Williams, NEPA Specialists for the Cumberland Fossil Plant Retirement environmental review, to notify them of the EPA FOIA request. (Smith Decl. ¶ 9.) Mses. Jacks, Booker, Pilakowski, and Williams are the TVA employees most familiar with the records responsive to this request (*id.*), and TVA has submitted detailed declarations describing the efforts of these employees to locate responsive records (*id.*; Pilakowski Decl. ¶ 2.)

When a FOIA requester challenges the adequacy of the agency's search, "the agency may rely on affidavits or declarations that provide reasonable detail of the scope of the search." *Rugiero v. U.S. Dep't of Just.*, 257 F.3d 534, 547 (6th Cir. 2001). These declarations "are entitled to a presumption of good faith." *Id.* at 544. "In the absence of countervailing evidence or apparent

7

inconsistency of proof, [such affidavits] will suffice to demonstrate compliance with the obligations imposed by the FOIA." *Id.* at 547 (internal quotation marks omitted).[4]

On March 14, 2024, TVA released four records and withheld 13 records in full or in part. (Smith Decl. ¶ 12; Doc. 42-1.) The records withheld in full contain predecisional and deliberative information that pre-date the final, published Cumberland EIS and include preliminary draft versions of various sections and/or appendices for the Cumberland EIS; a draft internal working document prepared by a NEPA specialist; and various email correspondences between TVA and EPA staff that contain predecisional discussions and deliberations on draft versions of the Cumberland EIS. (*See* Smith Decl. ¶ 14; Collins Decl. ¶¶ 19–21; *see also Vaughn* Index at Doc. 42-5.)

The two records Plaintiff complains are missing—"EPA's written feedback on the EIS from September 2, 2022 or EPA's final comments on the EIS from October 7, 2022" (Doc. 39 at PageID#440)—were in fact searched for and initially withheld under FOIA Exemption 5. But after a re-review of those records, TVA's FOIA Office released them to Plaintiff on April 22, 2025. (Attach. 2 to Collins Decl. ¶ 33, Doc. 42-6.). Plaintiff's other argument that TVA failed to "include analyses or reports that TVA may have provided to EPA as part of its review of the EIS" (*Id.* at PageID#441) recognizes the very nature of the types of records TVA withheld in full in response to the EPA FOIA request—the draft versions and appendices of the Cumberland EIS, which are pre-decisional and deliberative and protected under FOIA Exemption 5. *See Vaughn* Index at Doc. 42-5. And as explained, *infra* pp. 13–14, analyses referenced in the Cumberland EIS involve various types of modeling TVA conducted, the outcomes of which are presented and described in

---

[4]    This Court recently found that TVA's supporting declarations—which included the same type of information as included in Ms. Smith's and Ms. Pilakowski's declarations here—were sufficient. *See SELC v. TVA*, 2025 WL 1037248, at *3 (finding agency's declaration identifying relevant business units searched sufficient).

the text of the Cumberland EIS or within the accompanying appendices—the final versions of which are publicly available on TVA's website.

Accordingly, TVA's search for records responsive to Plaintiff's EPA Request complied with FOIA.

**B. TVA Conducted a Reasonable Search for Records on the Final EIS Request.**

Plaintiff's argument that TVA "improperly constrained the scope of its search related to" the Final EIS Request is based on two flawed premises: (1) that Plaintiff's use of the overbroad and vague term "*all* records" provides clear guidance for a reasonable FOIA search; and (2) that Plaintiff has the right to renege on its agreement to limit the scope of TVA's search to two locations of where potentially responsive records exist because its communications with TVA did not bind Plaintiff in "narrow[ing] the scope of its overall request." (Doc. 39 at PageID#441.)

**1. TVA Correctly Interpreted Plaintiff's Final EIS Request for "All Records" to Relate Only to "Final" Cumberland EIS.**

While "requests for *all documents* are neither inherently unreasonable nor uncommon," that phrase must be read in reference to the topic for the request to be reasonably described under FOIA. *Am. Ctr. for L. & Just. v. U.S. Dep't of Homeland Sec.*, 573 F.Supp.3d 78, 85 (D.D.C. 2021) (emphasis added). Such broad descriptions "leave the unfortunate FOIA processor assigned to such a case in a hopeless muddle without clear guidance about what documents are being sought [and] [c]ourts in this district have dismissed similarly worded requests[.]" *Id.*; *see also Nat'l Sec. Couns. v. CIA*, 969 F.3d 406, 410 (D.C. Cir. 2020) (finding that the FOIA request was "framed broadly" when the FOIA request sought "all [CIA] records pertaining to the IBM supercomputer 'Watson'"); *Seife v. U.S. Dep't of State*, 298 F.Supp.3d 592, 611 (S.D.N.Y. 2018) (finding request unduly burdensome when it is "'so broad as to impose an unreasonable burden upon the agency,' such as one which 'require[s] the agency to locate, review, redact, and arrange for inspection a

vast quantity of material.'"); *Haitian Bridge Alliance v. U.S. Dep't of Homeland Sec.*, No. 22-cv-8344, 2024 WL 476304, at *5 (S.D.N.Y. Feb. 7, 2024) ("A request requires unreasonable effort if it would effectively require the agency to search for all agency records on a given topic."). Accordingly, Plaintiff's Final EIS Request fails the "reasonably describe" requirement under FOIA, and TVA requests that Plaintiff's claim on this FOIA Request be dismissed. In *Am. Ctr. for L. & Just.*, the district court dismissed the case because the FOIA requester, as the "master of its request [] chose to include broad language[,]" and failed to "'reasonably describe[]' the requested records" as required by FOIA. 573 F.Supp.3d at 88; 5 U.S.C. § 552(a)(3)(A). A request "reasonably describes" agency records when it "would be sufficient [to enable] a professional employee of the agency who was familiar with the subject area of the request to locate the record with a reasonable amount of effort." *Truitt v. Dep't of State*, 897 F.2d 540, 545 n.36 (D.C. Cir. 1990).

Alternatively, assuming arguendo that Plaintiff's Final EIS Request satisfies the reasonable description standard, Plaintiff's Final EIS Request must be read in context with each word having meaning such that the request is not unreasonably burdensome. The exact phrasing of Plaintiff's Final EIS Request is: "All records related to the Cumberland Fossil Plant Retirement Final Environmental Impact Statement[.]" (Doc. 1-3.) TVA 's FOIA Office interpreted the Final EIS Request to include only records related to the "Final" EIS and not the "Draft" EIS. (Smith Decl. ¶ 22; White Decl. ¶ 9.)

### 2. TVA Properly Narrowed the Search Based on Plaintiff's Agreement on the Locations of Potentially Responsive Records.

As explained in detail in Ms. Smith's declaration, soon after receiving the Final EIS FOIA request, TVA's FOIA Office reached out to Ms. Booker and Ms. Pilakowski, the TVA employees who are most familiar with the records responsive to this request and asked that they begin

10

gathering potentially responsive records. (Smith Decl. ¶ 18.) Because Plaintiff's Final EIS Request was framed broadly, TVA's FOIA Officer, Ms. Smith, reached out to Plaintiff's attorney, Mr. Bussey, to discuss narrowing the Final EIS Request (Smith Decl. ¶ 19; Doc. 1-7 at PageID#30.) Following up on the parties' phone call, Ms. Smith sent Mr. Bussey an email attaching an "excel spreadsheet" and a screenshot of the "Cumberland Retirement folder," communicating that "[i]t would be helpful and speed up processing if we could narrow or focus your request." (Smith Decl. ¶ 20; Doc. 1-7 at PageID#30.) TVA's NEPA Specialist for the Cumberland EIS, Ms. Pilakowski, shared a copy of the Project Folder and excel document with TVA's FOIA Office, as all records potentially responsive to the Final EIS FOIA request are included in or referenced in the Project Folder and excel document. (Pilakowski Decl. ¶ 4.) Mr. Bussey responded by informing Ms. Smith that TVA "could narrow [the] Cumberland request by excluding all documents listed in the attached excel spreadsheet except for the following: CUF-REF.01, 08, 28, 40, 58, 68, 69, 106, 108, 113, 170, 175, 173, 191, 195, 234, 236, 240, 241, 254, 255, 256, 257, 259, 261, 263, CUF-AC-04, 05, 07, and CUF-PC.09, 15." (Doc. 1-7 at PageID#30.) Mr. Bussey also communicated that he was unable to narrow the request to exclude any of the folders included in the Cumberland Retirement project folder. (*Id.*)

Based on Mr. Bussey's communication and the language of the Final EIS Request, Ms. Smith proceeded with processing the Final EIS Request to include all records related to the Final Cumberland EIS as those records exist within the excel spreadsheet and the Project Folder. (Smith Decl. ¶ 22.) After processing the potentially responsive records through a third-party e-discovery vendor, TVA's FOIA Office, in consultation with TVA's Office of the General Counsel, reviewed the records for responsiveness and any applicable FOIA exemptions and responded to Plaintiff's FOIA request. (Smith Decl. ¶¶ 24-26; White Decl. ¶¶ 2-4, 7, 8; Collins Decl. ¶¶ 30-31.)

Thus, Plaintiff's position that it "did not narrow the scope of its overall [Final EIS] request" (Doc. 39 at PageID#441) is nonsense. First, FOIA permits an agency to request that Plaintiff narrow the scope of its request. *Rugiero*, 257 F.3d at 548 (describing 5 U.S.C. § 552(a)(3)(a)). And TVA maintains "discretion to construe requests reasonably and conduct flexible and targeted searches within their internal records systems" when responding to FOIA requests. *SELC v. TVA*, 2025 WL 1037248, at *3 (citing *Kowal v. U.S. Dep't of Just.*, 107 F. 4th 1018, 1028–29 (D.C. Cir. 2024)).

Second, Plaintiff clearly communicated its agreement to narrow the Final EIS Request and actively participated in the search for records by selecting specific records in the excel spreadsheet and requesting all responsive records contained within the Project Folder. (*See* Doc. 1-7 at PageID#30.) Plaintiff's own pleadings concede this point: "SELC also readily agreed to review a list of potentially responsive files *in order to better tailor the request.*" Compl., Doc. 1 ¶ 32 (emphasis added). After Ms. Smith shared the spreadsheet and the screenshot of the Project Folder, Plaintiff "*agreed to narrow the scope of the March 2023 FOIA request and sent back a list of files it was willing to exclude on August 4, 2023.*" *Id.* (emphasis added).

By participating in the search process and agreeing to narrow the search, Plaintiff cannot claim that TVA failed to conduct an adequate search based on the selection of the locations of files to which it agreed. Over 2,400 records were searched and reviewed that relate to the Cumberland EIS from both the excel spreadsheet and the Project Folder. (Pilakowski Decl. ¶¶ 4, 5; Smith Decl. ¶¶ 17, 22, 25, 26; White Decl. ¶ 4.). None of Plaintiff's arguments demonstrate that the search methodology TVA used approach was unreasonable.

### 3. Plaintiff's Claim that Certain Records *Should* Exist is Based on Speculation and Does Not Render TVA's Search Unreasonable.

In continuing to challenge the sufficiency of TVA's search, Plaintiff claims that "numerous documents relied upon in the Final EIS [ ] were not included in TVA's response" to the Final EIS, including "documents used in the alternatives analysis, the evaluation of solar plus storage referenced in the body of the Final EIS, and the analysis of the TVA-wide power system[.]" (Doc. 39 at PageID#441). However, Plaintiff's conjectural assertions that records must exist are the exact types of arguments that courts, including this Court, routinely reject as insufficient to show that the agency's search was inadequate. It is well-established that an agency's "failure to turn up a particular document, or mere speculation that as yet uncovered documents might exist, does not undermine the determination that the agency conducted an adequate search for the requested records." *Wilbur v. CIA*, 355 F.3d 675, 678 (D.C. Cir. 2004); *see also Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003) (noting that "it is long settled that the failure of an agency to turn up one specific document in its search does not alone render a search inadequate"); *SELC v. TVA*, 2025 WL 1037248, at *4 (rejecting SELC's results-suggest-inadequacy argument, explaining that "the law does not deem a search inadequate because a requester believes other documents exist").

As explained by Ms. Pilakowski, references in the Cumberland EIS to underlying analyses Plaintiff claims are missing relate to modeling TVA conducted on the alternatives analyzed in the EIS, the outcomes of which are presented and described in the EIS's text or within the accompanying publicly available appendices, like Appendix B to the EIS (alternatives analysis). (Pilakowski Decl. ¶ 5.) None of the underlying modeling was included in the Project Folder or referenced in the excel spreadsheet, nor did TVA's NEPA staff rely on the underlying modeling data when drafting the Cumberland EIS. Instead, the NEPA staff only used those documents

included in the Cumberland EIS appendices. (*Id.*) Therefore, TVA's searches for records responsive to Plaintiff's request complied with FOIA, and TVA is entitled to summary judgment on this point.

### C.      TVA Conducted a Reasonable Search for Records on the Concentric Request.

Plaintiff claims that TVA failed to conduct an adequate search on the Concentric Request, again emphasizing the term "all records" as providing clear guidance for a FOIA search when it does not. Accordingly, Plaintiff's Concentric Request fails the "reasonably describe" requirement under FOIA, and TVA requests that Plaintiff's claim on this FOIA Request be dismissed. *See Am. Ctr. for L. & Just.*, 573 F.Supp.3d at 88; *see also supra* pp. 9–10 (discussing FOIA's reasonable description requirement).

Alternatively, even if Plaintiff's Concentric Request satisfies the reasonable description standard, TVA explained above that the term "all records" has no meaning outside a reference to a specific topic. Here, Plaintiff sought "[a]ll records *of* TVA's *contractual agreement* with Concentric [] related to Concentric's October 3, 2022 report entitled 'Assessment of the Draft Environmental Impact Study and Response to Certain Reports.'" (Doc. 1-9 at PageID#37 (emphasis added).) TVA did exactly what was asked. TVA searched for all records *of* its contractual agreements with Concentric, processed those agreements with a submitter notice to Concentric,[5] and provided them with redactions to Plaintiff. (Smith Decl. ¶¶ 33-40; Collins Decl. ¶¶ 48-58.)

Yet Plaintiff argues that TVA failed to provide "other records that may have been created or shared during the negotiation and fulfilment of this contract." (Doc. 39 at PageID##441-442.)

---

[5]      "TVA will promptly provide written notice to the submitter of confidential commercial information whenever records containing such information are requested under the FOIA if TVA determines that it may be required to disclose the records[.]" 18 C.F.R. § 1301.8(c)

But Plaintiff did not request records related to the negotiation or fulfillment of those contracts. Plaintiff seems to believe that its Concentric Request should be interpreted as "all records *related to* TVA's contractual agreement with Concentric." But the word "of" does not mean "related to." The word "of" is a preposition that expresses the relationship between a part and a whole. "Of," Merriam-Webster, available at https://www.merriam-webster.com/dictionary/of (last visited May 5, 2025). Plaintiff's use of "all records of TVA's contractual agreement with Concentric" is interpreted as "all records" being the part within "TVA's contractual agreement," which is the whole. It does not matter if Plaintiff uses the word "all" because the critical limitation is "of" in the phrase "all records of TVA's contractual agreement with Concentric." It would be a different story if Plaintiff wrote "all records relating to," but Plaintiff did not.

This Court should hold Plaintiff, a sophisticated FOIA requester, to its chosen words.[6] *See Am. Oversight v. DOJ,* 401 F.Supp.3d 16, 36 (D.D.C. 2019) ("If courts do not hold FOIA requesters to their word—especially sophisticated ones who have demonstrated an ability to manipulate language to either narrow or broaden a request—agencies will always have to err on the side of the broadest plausible interpretation, forcing them to do more work than even the requesters themselves may have wanted."). Plaintiff's deliberate drafting of its FOIA request must be construed as written, which TVA properly interpreted as requesting the contractual agreements between TVA and Concentric. TVA produced those agreements with redactions pursuant to FOIA Exemption 4. (*See* Smith Decl. ¶¶ 36, 39.)

Therefore, as properly interpreted by TVA and reasonably described in the Concentric Request, TVA conducted a search reasonably calculated to uncover records responsive to this Request and is entitled to summary judgment on this point.

---

[6]     *See supra* note 3 (describing the volume and complexity of the numerous FOIA requests Plaintiff has submitted to TVA in the last two years).

## II. TVA Properly Withheld Records Under FOIA Exemptions 4 and 5.

Congress included specific exemptions to FOIA's general rule of disclosure "under which disclosure could be refused" because "legitimate governmental and private interests could be harmed by release of certain types of information." *FBI v. Abramson*, 456 U.S. 615, 621 (1982). Courts must give the exemptions "meaningful reach and application," *John Doe Agency*, 493 U.S. at 152, because the interests protected by the exemptions are just as integral to the purpose of FOIA "as the [statute's disclosure] requirement." *Argus Leader Media*, 588 U.S. at 439 (cleaned up). Records that fall within one of the nine FOIA exemptions, 5 U.S.C. § 552(b)(1)-(9), need not be disclosed. Of the nine exemptions recognized by FOIA, TVA withheld records here under four exemptions—Exemptions 3, 4, 5 and 6—but only two are relevant: Exemptions 4 and 5 (*supra* n.1). TVA will discuss below TVA's proper withholding of records in response to the EPA, Final EIS, and Concentric Requests in that order.

### A. TVA Properly Applied FOIA Exemption 5 to the Records Withheld in TVA's Response to the EPA and the Final EIS Requests.

As outlined in detail in Ms. Collins' Declaration and in the *Vaughn* Index (Docs. 42-4 and 42-5), TVA has complied with FOIA by providing reasonable justifications as to why certain information was properly withheld under FOIA Exemption 5 and why disclosure would result in foreseeable harm required under FIA. Similar to Plaintiff's argument about TVA's search, Plaintiff (again) jumps the gun by claiming that TVA failed to meet its burden under FOIA and FIA for withholding records because that "TVA's assertions are unsupported by declarations or affidavits." (Doc. 39 at PageID#445.)

16

**1. The Collins Declaration and the *Vaughn* Index Are Wholly Sufficient to Support TVA's Withholding of Information Under FOIA Exemption 5.**

Exemption 5 protects "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency[.]" 5 U.S.C. § 552(b)(5). This exemption "incorporates the privileges available to Government agencies in civil litigation," such as the deliberative process privilege, attorney-client privilege, and attorney work-product privilege. *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261, 267 (2021) (citing *U.S. Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001)). The deliberative process privilege and attorney-client privilege are relevant here.

The deliberative process privilege is a unique privilege available to government agencies and protects "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975) (cleaned up). The purposes of the deliberative process privilege in Exemption 5 are to (1) encourage frank discussions in government agencies; (2) protect government policies from public disclosure prior to being finalized; and (3) prevent public confusion regarding the ultimate rationale for an agency's adopted policy. *Jud. Watch v. U.S. Dep't of the Army*, 466 F.Supp.2d 112, 120 (D.D.C. 2006).

To fall within the scope of the deliberative process privilege, a document must be both predecisional and deliberative. *Schell v. U.S. Dep't of Health & Hum. Servs.*, 843 F.2d 933, 940 (6th Cir. 1988). "A document is predecisional when it is received by the decisionmaker on the subject of the decision prior to the time the decision is made," and it is deliberative when it "reflects the give-and-take of the consultative process." *Id.* (cleaned up) "To establish that a document is predecisional, the agency need not point to an agency final decision, but merely establish what deliberative process is involved, and the role [] that the documents at issue played in that process."

*Jud. Watch, Inc. v. Export-Import Bank*, 108 F.Supp.2d 19, 35 (D.D.C. 2000) (citing *Formaldehyde Inst. v. U.S. Dep't of Health & Hum, Servs.*, 889 F.2d 1118, 1223 (D.C. Cir. 1989)). The deliberative process privilege routinely "'covers recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency.'" *Schell*, 843 F.2d at 940 (quoting *Coastal States Gas Corp. v. U.S. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980)).

The attorney-client privilege protects "communications between attorneys and their clients." *Upjohn v. United States*, 449 U.S. 383, 389 (1981). Animating this exemption is the desire to not to force agencies "into a uniquely disadvantaged litigation posture." *Hunton & Williams v. U.S. Dep't of Just.*, 590 F.3d 272, 277 (4th Cir. 2010). The Supreme Court agrees: "[To allow a party to] obtain through the FOIA material that is normally privileged would create an anomaly in that the FOIA could be used to supplement civil discovery. We have consistently rejected such a construction of the FOIA." *U.S. v. Weber Aircraft Corp.*, 465 U.S. 792, 801 (1984). It is well-settled that the attorney-client privilege applies to communications between an attorney and entities like corporations and government agencies and their associated employees. *Upjohn*, 449 U.S. at 390; *Pub. Emps. for Env't Resps. v. EPA*, 211 F.Supp.3d 227, 231 (D.D.C. 2016) (citing *Tax Analysts v. IRS*, 117 F.3d 607, 618 (D.C. Cir. 1997) ("[T]he 'client' is the agency and its officials.")).

A detailed affidavit or a *Vaughn* index may be used to determine the adequacy of withholding records under FOIA Exemption 5. *See Jones v. FBI*, 41 F.3d 238, 242 (6th Cir. 1994); *Gallant v. NLRB*, 26 F.3d 168, 172-73 (D.C. Cir. 1994) (holding that justification for withholding provided by agency may take any form as long as agency offers "reasonable basis to evaluate [it]s claim of privilege"). The Sixth Circuit has explained that "the government need not justify its withholdings document-by-document; it may instead do so category-of-document by category-of-

18

document," so long as its definitions of relevant categories are "sufficiently distinct to allow a court to determine . . . whether the specific claimed exemptions are properly applied." *Vaughn v. U.S.*, 936 F.2d 862, 868 (6th Cir. 1991).

A handful of records are responsive to both Plaintiff's EPA and Final EIS Requests, as the two requests concern the analysis within the Cumberland EIS. For the purposes of convenience, TVA's *Vaughn* Index combines the category-by-category descriptions for the withholding of groups of documents responsive to both the EPA and Final EIS Requests and identifies the records that are responsive to both requests. (*Vaughn* Index.) TVA withheld 137 responsive records in response to the EPA and the Final EIS Requests because those records contain predecisional and deliberative information that pre-date the final, published Cumberland Fossil Plant Environmental Impact Statement ("FEIS"). (Collins Decl. ¶ 19-26, 36-46; *Vaughn* Index.) TVA withheld records under two categories and additional subcategories: (1) preliminary or draft documents related to the FEIS ("Preliminary FEIS Records"), and (2) TVA's National Environmental Policy Act ("NEPA") team's internal coordination or with the EPA ("NEPA Coordination Records"). (Collins Decl., ¶ 37.) TVA refers the Court to its *Vaughn* Index for a subcategory-by-subcategory description of why each record was properly withheld under FOIA Exemption 5. (Doc. 42-5.)

### 2. The Category-By-Category Explanation of Foreseeable Harm in the Collins Declaration and the *Vaughn* Index Provides Sufficient Detail to Support TVA's Withholding Under the FIA.

Agencies may also satisfy FIA's requirement for articulating foreseeable harm on a category-by-category basis. *See Ctr. for Pub. Integrity v. DOD*, 486 F.Supp.3d 317, 337 (D.D.C. 2020) (finding that agencies categorized withholdings under Exemption 5 and explained particular harm that would be caused by release of information in each category and therefore met requirements of FIA); *Rosenberg v. DOD*, 442 F.Supp.3d 240, 259 (D.D.C. 2020) (concluding that

agency "may take a categorical approach" and "group together like records" but "must explain the foreseeable harm of disclosure for each category").

With respect to the deliberative process privilege, to demonstrate foreseeable harm an agency "must provide context or insight into the specific decision-making processes or deliberations at issue, and how they in particular would be harmed by disclosure." *Tobias v. U.S. Dep't of Interior*, No. 22-167, 2024 WL 894925, at *8 (D.D.C. Mar. 1, 2024) (citations omitted); *Am. Ctr. for Law & Just. v. NSA*, 474 F.Supp.3d 109, 136 (D.D.C. 2020) (finding that "declarations provide a reasonable basis to think that disclosure of the withheld materials would harm several interests that Exemption 5 protects, such as encouraging candid discussions and guarding against premature disclosure and public confusion"). Because the attorney-client privilege "holds a prominent and sacrosanct role in the law" and release of documents revealing such communications "would undoubtably undermine [the] legal culture," a description of how disclosure would impair the relationship between an attorney and its client is sufficient to satisfy the foreseeable harm requirement. *Reps. Comm. for Freedom of the Press v. United States Customs & Border Prot.*, 567 F.Supp.3d 97, 120 (D.D.C. 2021).

TVA withheld records in categories Preliminary FEIS Records and NEPA Coordination Records because each record reflects pre-decisional assumptions, recommendations, data, and/or opinions. (Collins Decl. ¶¶ 24, 26, 41.) The disclosure of these records would cause foreseeable harm by chilling frank and constructive opinions, criticisms, and recommendations in the future on the fear that those opinions and recommendations would be made public, which would impair the overall quality of TVA's processes and deliberations. (*Id.* ¶¶ 24, 26, 41). The public release of draft documents and email communications with draft opinions, preliminary data, and recommendations that were not fully formed at the time or may contradict the final agency position on topics reflected in the Cumberland FEIS, would cause public confusion, and/or would be

misunderstood without the proper context. (*Id.* ¶¶ 25, 42). The public release of attorney-client communications would impair the attorney-client relationship such that TVA employees would not trust seeking legal advice from TVA attorneys. (*Id.* ¶¶ 43, 54). Therefore, TVA's explanations of the bases for its withholdings outlined in the *Vaughn* Index are more than sufficient to establish foreseeable harm.

**B.  TVA Properly Applied FOIA Exemption 4 to the Records Withheld in TVA's Response to the Concentric Request.**

TVA properly withheld confidential, commercial information obtained from Concentric pursuant to FOIA Exemption 4. To qualify for protection under Exemption 4, records must fall under one of two broad categories: (1) trade secrets; or (2) information that is (a) commercial or financial and (b) obtained from a person and (c) privileged or confidential. 5 U.S.C. § 552(b)(4); *see also Pub. Citizen Health Rsch. Grp. v. FDA,* 704 F.2d 1280, 1288–90 (D.C. Cir. 1983). TVA properly invoked FOIA Exemption 4 because the withheld information was confidential commercial third-party information. The agency must also "reasonably foresee[] that disclosure would harm an interest protected by" Exemption 4. 5 U.S.C. § 552(a)(8)(A)(i)(I).

After identifying the contractual agreements between TVA and Concentric as the only responsive records to the Concentric Request, TVA's FOIA Office processed a submitter's notice to Concentric pursuant to TVA's FOIA regulations, 18 C.F.R. § 1301.8(d). (Smith Decl. ¶¶ 36-38.) Concentric responded, requesting that its confidential, commercial information be withheld under FOIA Exemption 4. (Smith Decl. ¶ 38; Doc. 42-3.)

### 1.  The Information Concentric Provided Was Confidential, Commercial Information.

In its March 21, 2024 letter responding to the submitter notice, Concentric communicated the confidential and commercial nature of the withheld information and the foreseeable harm such disclosure would cause:

Competitive Harm: Disclosure of our Company's contracts and billing rates could provide our competitors with sensitive information about our pricing strategies, negotiation tactics, and client relationships. This could result in unfair competitive advantages for other businesses operating in the same industry.

Financial Impact: Disclosure of our billing rates could impact our ability to negotiate fair compensation for our services and could undermine our Company's financial viability.

Commercial Interests: As a private entity, Concentric has a legitimate interest in protecting sensitive business information from public disclosure, particularly when such disclosure could harm our commercial interests.

(Doc. 42-3.)

Clearly, Concentric provided a good-faith basis for why its confidential, commercial information should be withheld. (Collins Decl. ¶¶ 50-52; Smith Decl. ¶ 39.) In reviewing similar categories of information, this Court has held that "information contained in the withheld provisions [related] to rates, terms, pricing, and business strategy" are the types of confidential, commercial information protected under FOIA Exemption 4. *SELC v. TVA*, 659 F.Supp.3d 902, 913–14 (E.D. Tenn. 2023) (citing *Pub. Citizen Health Rsch. Grp.*, 704 F.2d at 1290; *Baker & Hostetler*, 473 F.3d at 319)). Other courts facing similar facts have routinely reached the same conclusion. *See, e.g.*, *Baker & Hostetler LLP v. United State Dep't of Com.*, 473 F.3d 312, 320 (D.C. Cir. 2006) ("U.S. lumber companies have a 'commercial interest' in . . . letters [that] describe favorable market conditions for domestic companies, and their disclosure would help rivals to identify and exploit those companies' competitive weaknesses."); *Zirvi v. U.S. Nat'l Insts. of Health*, No. CV 20-7648, 2022 WL 1261591, at *5 (D.N.J. Apr. 28, 2022) ("[The provider of information] has a 'commercial interest' in its own manufacturing and design process."); *Landfair v. U.S. Dep't of Army*, 645 F.Supp. 325, 327 (D.D.C. 1986) ("Examples of items generally regarded as commercial or financial information include: business sales statistics, research data,

22

technical designs, overhead and operating costs, and information on financial condition."). Thus, Concentric's information should be protected under the same rationale.

### 2. Concentric's Confidential, Commercial Information Withheld Was Obtained From a Person.

"Information is considered 'obtained from a person' if the information originated from an individual, corporation, or other entity, and so long as the information did not originate within the federal government." *Elec. Priv. Info. Ctr. v. United States Dep't of Homeland Sec.*, 117 F.Supp.3d 46, 63 (D.D.C. 2015). Concentric is a "person" within the meaning of FOIA Exemption 4. TVA obtained the confidential, commercial information at issue from Concentric. The Court's key inquiry is who the source of the information was in the first instance, not necessarily who created the particular document. *SELC v. TVA*, 659 F.Supp.3d at 914 (citing *Elec. Priv. Info. Ctr.*, 928 F.Supp.2d at 147) (internal citations and quotations omitted).

This Court has recognized that the term "information" indicates that the Court must look beyond the creation of the documents at issue and to whether "release of this information would disclose data supplied to the government from a person outside the government." *Id*. at 915 (citing *Gulf & W. Indus. v. United States*, 615 F.2d 527, 530 (D.C. Cir. 1979)). "The fact that information was negotiated [does not] preclude the proper application of Exemption 4, at least in circumstances where the information was initially obtained from outside the agency and was then modified through negotiations." *S. All. for Clean Energy v. U.S. Dep't of Energy*, 853 F.Supp.2d 60, 68 (D.D.C. 2012)). "'[T]he key distinction—which will obviously be blurry in many instances—is between information that is either repeated verbatim or slightly modified by the agency, and information that is substantially reformulated by the agency, such that it is no longer a 'person's' information but the agency's information." *Id.* Here, TVA obtained the confidential commercial information from Concentric in those agreements and did not reformulate the redacted information

23

such that it can be considered belonging to TVA. (Collins Dec. ¶¶ 5052.) *See SELC v. TVA*, 659 F.Supp.3d at 915 (citing *S. All. For Clean Energy*, 853 F.Supp.2d at 67 and holding that information redacted from a commercial agreement between TVA and its counterparty was submitted by a "person" as it was not "substantially reformulated" by TVA such that the provisions of the agreement represented TVA's own analysis).

### 3. TVA and Concentric Articulated the Requisite Foreseeable Harm Under the FIA.

TVA's withholding of Concentric's confidential commercial or financial information under FOIA Exemption 4 satisfied the reasonably foreseeable harm standard established by the FIA. Here, foreseeable harm is self-evident because, by its very nature, confidential information—whether personal, private, commercial, or financial—loses its confidentiality when disclosed to the public. In its March 21, 2024 lettered response, Concentric communicated that disclosure of its confidential, commercial information would harm its "ability to negotiate fair compensation for [its] services" and undermine its "financial viability." (Doc. 42-3.) "[T]he plain and ordinary meaning of Exemption 4 indicates that the relevant protected interest is that of the information's *confidentiality* — that is, its private nature. Disclosure would necessarily destroy the private nature of the information, no matter the circumstance." *Am. Small Bus. League v. U.S. Dep't of Def.*, 411 F.Supp.3d 824, 836 (N.D. Cal. 2019). Other courts have held that an agency may satisfy the foreseeable harm requirement by showing that disclosure would cause "genuine harm to [the submitter's] economic or business interests, and thereby dissuad[e] others from submitting similar information to the government." *Ctr. for Investigative Reporting v. U.S. Customs and Border Prot.*, 436 F.Supp.3d 90, 113 (D.D.C. 2019) (cleaned up).

Accordingly, the confidential, commercial information obtained from Concentric was properly withheld under FOIA Exemption 4, and TVA is entitled to summary judgment on this point.

**C.      TVA Has Properly Released All Reasonably Segregable Information.**

When an agency claims an exemption, FOIA requires disclosure of "[a]ny reasonably segregable portion" of the record after deleting the portions which are exempt. 5 U.S.C. § 552(b). But an agency need not disclose records in which the non-exempt information remaining is meaningless, *see Nat'l Sec. Archive Fund, Inc. v. CIA*, 402 F.Supp.2d 211, 220-21 (D.D.C. 2005), and an agency need not disclose material that is inextricably intertwined with the exempt material, *see In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997). "Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007); *see also Reps. Comm. for Freedom of the Press v. United States Customs & Border Prot.,* 567 F.Supp.3d 97, 131 (D.D.C. 2021).

TVA undertook a careful review of all the withheld records to review for segregability, and it reasonably determined, as explained in the Collins Declaration, that all non-exempt information that could be released in responses to the EPA, Final EIS, and Concentric Requests were released. (Collins Decl. ¶¶ 27, 45, 57.)

**CONCLUSION**

For the reasons stated and upon the authorities cited above and in TVA's response to Plaintiff's motion for summary judgment (Doc. 38), the Court should grant TVA's cross-motion for summary judgment and deny Plaintiff's motion for summary judgment.

Respectfully submitted,

_s/Steven C. Chin_
David D. Ayliffe (TN BPR 024297)
Associate General Counsel
Steven C. Chin (TN BPR 030011)
Sydney D. Nenni (TN BPR 038898)
Office of the General Counsel
Tennessee Valley Authority
400 West Summit Hill Drive
Knoxville, Tennessee 37902-1401
Telephone 865.632.3052
scchin@tva.gov

*Attorneys for Tennessee Valley Authority*

26

**CERTIFICATE OF SERVICE**

I certify that the foregoing document was filed electronically through the Court's ECF system on the date shown in the document's ECF footer. Notice of this filing will be sent by operation of the Court's ECF system to all parties as indicated on the electronic filing receipt. Parties may access this filing through the Court's ECF system.

*s/Steven C. Chin*
Attorney for Tennessee Valley Authority

27